DANIEL WEBSTER v. ROBERT G. BROWN.

*Statute of frauds—Contract for sale of land.*

1. An agreement for the sale of land not specifying the *purchase price*, nor the *time* or *times* of *payment*, is insufficient to answer the requirements of the statute of frauds.

2. A contract for the sale of lands must be complete in itself, and leave nothing to rest in parol. *Hall v. Soule*, 11 Mich. 494; *James v. Muir*, 33 Id. 223; *McElroy v. Buck*, 35 Id. 434; *Gault v. Stormont*, 51 Id. 636.

Appeal from Lapeer. (Stickney, J.) Argued October 7, 1887. Decided October 20, 1887.

Bill for specific performance of land contract. Defendant appeals. Reversed and bill dismissed. The facts are stated in the opinion.

*Geer & Williams,* for complainant.

*P. H. Phillips,* for defendant.

MORSE, J.　In October, 1883, the complainant filed his bill of complaint against the defendant, asking for the specific performance of a certain agreement or contract, made between one Albert Chick and the defendant, bearing date May 4, 1869, for the sale and purchase of the west half of the south-east quarter of section 8, township 9 north, of range 13 east, in the county of Sanilac.

It appears from the evidence that, on the last-mentioned day, Chick, who was living with his brother-in-law, Henry A. Horton, at North Branch, in Lapeer county, paid the defendant $75, and was handed an agreement or receipt reading as follows:

"Received of Albert Chick seventy-five dollars, as part payment on a certain piece of land described as follows: West half of south-east quarter of section eight, town nine north, of range thirteen east, being in Sanilac county and State of Michigan.

"The undersigned agrees to make and deliver to the said Albert Chick a bond for a warranty deed on or before the first day of January, 1870.　Said bond is to express the several payments that is to be made, and the amount remaining to be paid.

　　　　　　　　　　　　　　　　"ROB'T G. BROWN.

"Dated this fourth day of May, A. D. 1869."

The defendant was then residing on a farm, where Brown City is now located, in the county of Sanilac.

Before the time for completing the arrangement and delivering the bond for a deed, Chick left the State, and has never since been heard of or from by the defendant.　He is now supposed to be in Dakota or Manitoba, but his existence is not certain.

Horton claims that he lent the money to Chick to make the payment of the $75.　Chick left the receipt with Horton when he went away.　In January, 1870, Horton took the receipt and went to see Brown.　A day was appointed for another meeting at the store of one Bruce, but the defendant, being sick, did not attend, but sent his nephew with a

letter to Mr. Bruce, and a copy of a contract to be filled out and signed by Horton, the agent for Chick, if it was thought he had power to do so.

Horton paid Bruce for defendant $30.29, and took the following receipt:

"Received of Albert Chick, by the hand of H. A. Horton, $30.29, amount of interest and balance of taxes due up to this date on the land contract.

"R. G. BROWN,<br>"per J. G. BRUCE."

The contract sent to Bruce was never filled out or signed by any one.

Some time between this and 1873, Horton called upon the defendant. He claims that he wanted Brown should execute the agreement, or pay back the money. Brown and his wife testify that he said nothing about the agreement, but simply asked to have the money paid back to him. Brown says he told Horton that, if Chick would come back and pay the interest and principal, he could have the land, for he did not want it. Horton did not then know whether Chick was dead or alive, as Brown swears he told him.

Here ended all talk about or demand upon Brown for the land, or the money paid him, until February, 1883, at which time the complainant made him a tender of the amount due upon the contract, and demanded a deed of the land. Webster obtained an assignment from Chick through Horton, dated December 5, 1881.

Brown took no steps to forfeit the contract, but treated the same as abandoned, and made about $100 of improvements upon the land. By the opening of a railroad through the country near the land, it has become quite valuable, being worth at the time the bill was filed from $1,500 to $1,800.

The court below granted a decree for specific performance, unless the defendant should elect to refund to the complainant the amount of money paid him, with interest; such sum being fixed at $236.56.

There was not enough of this agreement to constitute a contract for the sale of lands. It was insufficient to answer the requirements of the statute of frauds. It did not specify the purchase price, and failed to express the time or times of payment. Under the decisions of this Court, such a contract must be complete in itself, and leave nothing to rest in parol. *Hall v. Soule,* 11 Mich. 494; *James v. Muir,* 33 Id. 223; *McElroy v. Buck,* 35 Id. 434; *Gault v. Stormont,* 51 Id. 636.

At most, it is but an agreement to make a land contract. Its terms cannot be helped out or ascertained by the letter sent by defendant in June, 1870, to Bruce, as such letter simply contained instructions to Bruce how to fill out the contract, if one should be executed. The contract was never executed, and the letter can form no part of the original contract.

Besides this, complainant has no equity, as shown by the proofs. For 13 years this agreement was virtually treated as abandoned by all the parties to it.

When the land becomes valuable, Chick is hunted up, an assignment made to complainant, and an attempt made to revive it, and obtain the premises.

The delay in this case is entirely inconsistent with any good-faith claim on the part of complainant that Chick intended to carry out this agreement. It will also be noticed that Chick has never made any agreement to purchase the land, or pay any price for it at any time or times. There is no evidence that Chick, after he left the country, ever paid any attention whatever to the contract.

In order to get the assignment, Horton had to find Chick, and send it for execution to him at Manitoba.

The decree cannot be sustained. It would not be equitable to decree a specific performance of this agreement, which is not complete or legal, and which has been practically abandoned for so many years.

The bill does not pray for a repayment of the moneys named in the receipts, and could not be maintained for that purpose alone. There was no warrant for that part of the decree of the court below.

The decree is reversed, and the bill will be dismissed, with costs of both courts.

The other Justices concurred.