Julia A. Edwards, Extx., v. Adam Rives.—Syllabus.

---

JULIA A. EDWARDS, AS EXECUTRIX, APPELLANT, VS. ADAM RIVES, APPELLEE.

1. A party to a suit against the guardian of an insane person can not be examined as a witness in regard to any transactions or communications between himself and such insane person, if such person was insane at the time of such examination, unless the said guardian has testified to the same transactions and communications, or the testimony of such insane person thereto has been given in evidence.

2. In a suit for the specific performance of a written contract for the sale of land, the denial of the alleged contract puts upon

the plaintiff the burden of proof, and he must establish by clear and satisfactory evidence, not only the making of the contract, but the terms of it also, to entitle him to a specific performance thereof.

3. Where a written contract has been lost, and a diligent *bona fide*, but fruitless, search has been made for it in all places where it would probably have been kept, secondary evidence of its contents is admissible.

4. Where neither the language nor any part of the contents of a lost paper is given by the witness, his opinion as to the meaning or effect of the instrument is incompetent to prove its contents.

5. An executory agreement for the sale of land which fails to describe or otherwise identify the land and name the purchase price and time of payment, is not enforceable in a court of equity.

6. The proof of the contents of a lost paper ought to be clear and satisfactory.

Appeal from the Circuit Court for Marion county.

### STATEMENT.

Adam Rives, the appellee, on the first day of April, A. D. 1887, filed his bill against William Edwards in the Circuit Court for Marion county, in chancery, and therein prayed for the specific performance of a contract for the sale of real estate, alleged to have been entered into between him and William Edwards. It was alleged in the bill that about the month of November, 1874, William Edwards did contract to sell and did sell to Adam Rives that certain parcel of land situated in the county of Marion, in the State of Florida, and particularly described as being the W. ½ of the N. W. ¼ of Sec. 4, in T. 12 S., R. 20 E., containing eighty acres, at the stipulated price of five dollars per acre, or an aggregated sum of four hundred dollars, and did at the same time put him in possession as the vendee and owner thereof; and as such vendee and owner he

has ever since been continuously and now is in the actual occupancy and possession of said tract of land and resides thereon with his family, and has made valuable improvements of various kinds thereon. At the time of the sale of this tract of land, William Edwards made and delivered to Adam Rives a written memorandum of agreement to sell and convey said land to him; the provisions of which writing were, that William Edwards agreed and bound himself to execute and deliver to Adam Rives good and perfect titles to said tract of land, so soon as William Edwards could perfect his own title thereto, the legal title thereto being at the time in another party, and upon the payment to William Edwards by Adam Rives of the price of five dollars per acre. By some unavoidable accident Adam Rives has lost this written memorandum, so that it is not now in his custody, possession or control. Adam Rives has fully paid to William Edwards at various times in cotton, corn and other goods and chattels, and in work and labor performed for him at various times, at his request, and at stipulated prices, the stipulated price for said land, and even more; yet William Edwards has neglected, failed and refused to convey said land to Adam Rives.

William Edwards filed his answer to said bill on the 29th of April, A. D. 1887, and therein admitted that Adam Rives had been in possession of the land in controversy since November, 1874, but alleged that he was in possession thereof as a tenant, and not as a purchaser. He denied the making of the contract as stated in the bill. A general replication to this answer was filed on the 6th of June, A. D. 1887.

William Edwards was afterwards adjudged a lunatic, and Julia A. Edwards was by consent of counsel

appointed his guardian *ad litem* on the 6th of March, A. D. 1888. Afterwards William Edwards died testate, and Julia A. Edwards, who was the executrix of his last will and testament, was made a defendant to said suit, with the consent of counsel, on the first day of April, A. D. 1889.

The cause was afterwards heard, and a final decree for the specific performance of the alleged contract was rendered therein by the chancellor on the 28th of June, A. D. 1890. Whereupon Julia A. Edwards, as executrix, etc., appealed to this court and assigned the granting of this decree for error.

*W. W. Hampton*, for Appellant.

*Evans Haile*, for Appellee.

### BRIEF FOR APPELLEE.

There is no merit in appellant's contention that the appellee was in laches in instituting his suit. The bill and the proofs, uncontradicted, show that the complainant was put into possession of the land at the inception of his contract of purchase, and that he has been in the actual and notorious possession and occupancy of it ever since. The proof shows further, overwhelmingly, (see evidence of Ed Reeves, Mrs. Reeves, J. O. Cosby, all white people and not related to complainant, and ...................., all disinterested witnesses), that the complainant had, long before instituting his suit, fully paid, and more than paid, the purchase contract price. Under these condititions delay, by the vendee in possession, in instituting his suit, no matter how long continued, will not defeat his remedy of specific performance. Pomeroy on Contracts of Specific Performance, sec. 404, and numerous citatations, English and American.

JANUARY TERM, 1895. 93

Julia A. Edwards, Extx., v. Adam Rives.—Argument of Counsel.

It is further objected that the complainant had no written memorandum signed by the vendor, and that, therefore, a decree of specific performance is obnoxious to the statutes of frauds. It is proved by the complainant's witnesses (J. O. Cosby and Jacob Feaster's testimony) that there was a written contract signed by Edward, but that it was lost. Its contents, or the substance thereof, are abundantly proved. But even if there never was any such written contract or memorandum, it is now overwhelmingly settled both in this country and in England, that where possession is given to the vendee, as in this case, and he has fully, or even partially paid the purchase price, such possession takes the case out of the operation of the statute of frauds, and a verbal contract, in such cases, will be specifically enforced. Pomeroy on Contracts, Specific Performance, sec. 115, and numerous cases there cited.

It is further objected that the description of the land in the contract of sale was so indefinite and imperfect that no specific performance could be decreed. The general rule is that the description of the land in the contract must be such that it can be indentified with accuracy and clearness. 22 Am. & Eng. Ency. of Law, bottom page 963, and citations of cases where descriptions were held sufficient, at page 965.

In Simmons vs. Spruill, 3 Jones Eq. (No. Car.) 9, it is held that where the contract described the land as "the A. B. Farm," it was sufficient, provided the tract thus called is capable of being otherwise indentified. The description of the land here specifically mentions a defined fractional part of a given section, township and range, and by the evidence in the cause it is perfectly and clearly identified. This, under the authorities cited, is sufficient.

It is again objected that the complainant, Adam Rives, should not have been allowed to testify under our statute, because at the time of his testifying William Edwards was insane, etc. It will be observed that William Edwards filed a sworn answer in *propria persona* prior to his lunacy. Under the rules this answer counts in the cause as his evidence. The object of the statute is to put parties on an equality, and prohibits the living and sane from taking advantage of the dead or insane by testifying to transactions, etc., when the mouth of the others are sealed. The very object of the statute is defeated if we allow one party to have his individual say in the shape of a sworn answer, and then close the mouth of the other, because his opponent subsequently becomes insane. The statute itself (page 518 McClellan's Digest, sec. 24) excepts from its prohibition transactions and communications as to which the testimony of the deceased person or lunatic shall be given in evidence. William Edwards' personal answer in the cause counts as his evidence, and has such weight that it must be overcome by the evidence of two witnesses, or that of one witness and strongly corroborative circumstances. This being true, if his answer is to weigh as his evidence, then Adam Rives certainly, under the statute, has the right to testify fully as to all transactions covered by that answer. Laming vs. Laming, 2. C. E. Green (N. J. Eq.) 228; Sweet vs. Parker, 7 C. E. Green (N. J. Eq.) 453.

It is urged with much stress that the complainant Rives, if he ever had any rights as purchaser, has waived and abandoned them by paying rents. The proof shows that Adam Rives is an ignorant colored man; that he relied upon the defendant, William Edwards, not only as his personal and political friend and

adviser in all matters, but as his attorney as well; that Edwards was paying the taxes on the land every year, and that in liquidation of taxes, he (Rives) contributed annually to him from the products of the land, not as rents, but as payments for taxes and other business dealings had with him, but when Mrs. Edwards, through Knox and Wideman as her agents, come to make collections as rents, and open his eyes as to the denial that they make of his rights in the land as purchaser and owner thereof, we find him very promptly asserting his right by this bill.    Under the overwhelming proofs, from disinterested witnesses, that Edwards, long before these pretended rent payments, acknowledged the payment in full by Reeves of the agreed purchase price of the land, and that he was entitled to a conveyance thereof, it seems puerile to argue that a sane man would knowingly and understandingly waive his rights by paying rents for land that was really and truly his own.

A careful consideration of all the facts in proof, and of the relative positions, social and intellectual, of William Edwards, the educated lawyer, and Adam Rives, the ignorant ex-slave, we confidently predict will lead the mind of the appellate court to the same conclusion as it did that of the chancellor below, that it is a case clearly warranting the decree for specific performance made.

(Judge Malone, of the Second Circuit Court, sat in the place of Mr. Justice Taylor, disqualified).

MALONE, Circuit Judge (*after stating the facts*).

Two questions of paramount importance are presented by the petition or appeal, *viz:* (1) Whether Adam Rives was a competent witness as to the trans-

actions and communications between himself and William Edwards; and (2) whether the chancellor erred in granting a decree for the specific performance of the alleged contract. We will proceed to discuss these questions in their order.

I. Adam Rives was the plaintiff in the suit, and at the time of his examination as a witness William Edwards was insane, and represented in said suit by Julia A. Edwards as his guardian *ad litem*. Under these circumstances Adam Rives was an incompetent witness as to any transaction or communication between himself and William Edwards, and his testimony touching these transactions and communications should have been suppressed. Rev. Stat. sec, 1095; Holliday vs. McKinne, 22 Fla. 153; Tunno vs. Robert, 16 Fla. 738; Stewart vs. Stewart, 19 Fla. 846, McClellan's Digest, pp. 518-24. The answer of William Edwards to the bill does not remove the inhibition of the statute as to the competency of Adam Rives as a witness in his own behalf to transactions and communications between himself and William Edwards, and bring him within the exception of the statute. Therefore, in considering the testimony in this case, that of the plaintiff, Adam Rives, relative to such transactions and communications, must be excluded.

II. The allleged contract for the sale of land is denied by the answer, and the burden of proof is thereby put upon the appellee; and he must establish by clear and satisfactory evidence not only the making of the alleged contract, but the terms of it also, to entitle him to a specific performance. 22 Am. & Eng. Ency. of Law, 1075, 1076.

It appears from the testimony in the record that a written memorandum of the alleged contract was made by William Edwards and delivered to Adam Rives and

was afterwards lost, and that diligent, but fruitless, search was made therefor. Under these circumstances oral testimony of its contents is admissible to establish its terms, of which the following is a summary introduced in the present case, *viz:* (The testimony of Edward R. Rives relative to the contents of the lost paper writing) "I saw in Adam Rives' possession in my field while we were sowing oats a written paper that I knew and then recognized to be in Judge Edwards' handwriting; and signed with Judge Edwards' name, which paper as I now recollect its contents was an agreement by Edwards to make Adam Rives a title to the eighty acres of land whenever he, Edwards, should get a title or shadow of title to same; I do not remember the date of that paper." (The testimony of J. O. Cosby relative to the contents of the lost paper writing): "The substance of said paper is, as I recollect it, as follows: Micanopy, Florida. This is to certify that I have sold Adam Rives eighty acres of land in the north-west corner of S. — the section and numbers I can not recollect—for the sum of four hundred dollars, for which I am to give him title when I get in possession of title myself. (Signed) William Edwards." (The testimony of J. M. Feaster relative to the contents of the lost paper writing): "The contents of the paper was as follows: I, William Edwards, promise to give Adam Rives titles to the place of which he is in possession, when I come into possession of titles. (Signed) William Edwards. I do not remember the date of this paper."

Upon an examination of the testimony of Edward R. Rives it will be observed that he testified neither to the language nor the contents of the lost paper writing, but simply expressed his opinion as to the effect of its

contents.  The opinion of the witness can not be substituted for evidence and accepted by the court as proof of the fact sought to be established.  His recollection of the language, or the substance of the contents, of the lost paper writing is proper testimony to establish its contents, but his opinion of the effect of the substance of its contents is not evidence for that purpose. Elwell vs. Walker, 52 Iowa, 256.  The testimony of J. O. Cosby fails to show that the lost paper contained any description or identification of the land in controversy, or the time of the payment of the purchase price thereof.  These would be essential ingredients to the validity of the paper writing, if in existence, and must be established by secondary evidence, if lost or destroyed, before the aid of a court of equity can be successfully invoked to enforce a specific performance of it.  Patrick vs. Sears, 19 Fla. 856; Madeira's Heirs vs. Hopkins, 12 B. Mon. 595; 22 Am. & Eng. Ency. of Law, 963, note 2.  The testimony of J. M. Feaster fails to show that the lost paper writing contained the purchase price of the land, and the time of its payment. This is also an essential ingredient in a valid agreement for the conveyance of land, and in the absence of it the specific performance of the agreement will not be enforced by a court of equity.   Webster vs. Brown, 67 Mich. 328, 34 N. W. Rep. 676; Woodruff vs. Woodruff, 44 N. J. Eq. 349, 16 Atl. Rep. 4; Edichal Bullion Co. vs. Columbia Gold Mining Co., 87 Va. 641, 13 S. E. Rep. 100.  The testimony of these several witnesses varies materially as to the contents of the lost paper writing, and leaves the mind in much uncertainty and doubts as to its material parts.  In Taylor vs. Riggs, 1 Peters, 591, Chief-Justice Marshall stated "that the proof of the contents of a lost paper ought to be clear and satisfactory as to the substantial parts of the

paper," and we concur in his statement of the law on this subject. Fries vs. Griffin, 35 Fla. ——, 17 South. Rep. 66. We think the testimony was insufficient to authorize the granting of the decree for the specific performance of the alleged contract.

The decree is reversed and the cause remanded for further proceedings in accordance with this opinion.