CARROLL *v.* PALMER MANUFACTURING CO.

1. FRAUDS, STATUTE OF—CONTRACT FOR TERM OF ONE YEAR OR UP-
WARDS—MASTER AND SERVANT—WORK, LABOR AND SERVICES.
A contract of employment to begin the first of the following
month and to terminate at the end of a year was within
the statute of frauds.

2. SAME—MEMORANDUM—LETTERS.
Written correspondence between the parties to a contract
which the statute of frauds requires to be in writing,
not specifying the term of employment or the amount of
salary agreed upon, was not sufficient to establish a valid
agreement, under the statute.

3. PLEADING—COMMON COUNTS—WORK, LABOR AND SERVICES—VOID
CONTRACT.
A plaintiff may recover upon the common counts in as-
sumpsit for services that were performed under a contract,
void because it was not in writing.

4. SAME—TRIAL—AMENDMENT.
By amending his declaration that set up the common
counts, so as to include only a special count in assumpsit
for breach of a contract of employment, the plaintiff made
it necessary to amend his declaration in order to recover
on the *quantum meruit* for services performed: failing to
ask for and obtain leave to amend at the trial, the plaintiff
was properly denied the right to recover.

Error to Kent; Perkins, J. Submitted October 13,
1913. (Docket No. 23.) Decided July 24, 1914.

Assumpsit by William F. Carroll against the Pal-
mer Manufacturing Company for breach of a con-
tract of employment. Judgment for defendant on a
directed verdict. Plaintiff brings error. Affirmed.

*George E. Nichols* and *C. G. Turner,* for appellant.
*Hatch, McAllister & Raymond,* for appellee.

BIRD, J.   The plaintiff seeks to recover in this suit a balance which he claims is due him on salary account as traveling salesman while in the employ of the defendant.   The claim was made by him upon the trial that he was employed on or about December 15th for one year from and after January 1, 1911, at a salary of $25 per week, and that he was wrongfully discharged some time in April, 1911.   The bill of particulars covered his salary from January 1, 1911, to January 1, 1912, at the contract price of $25 per week. This claim was met with the objection that the agreement, being oral, was within the statute of frauds; it not being a contract that was to be performed within a year from the making thereof.   3 Comp. Laws, § 9515 (4 How. Stat. [2d Ed.] § 11399).   The trial court indicated to the plaintiff that this objection was well taken, whereupon he then insisted that he had a right to recover under the *quantum meruit,* and he asked that the case be submitted to the jury under the common counts; but the trial court held that the amended declaration did not contain the common counts, and accordingly a verdict was directed for the defendant.   The plaintiff complains of the ruling of the trial court upon both of these propositions.

1. Was the contract within the statute of frauds? The contract having been made in December, 1910, to begin on January 1, 1911, and end on January 1, 1912, it was, without doubt, a contract not to be performed within a year.   The plaintiff recognizes this, but claims that it is rescued from the operation of the statute by the correspondence which passed between the parties.   The letters and parts of letters relied upon for this purpose are as follows:

"November 14, 1910.
"Do not forget to inform your customers of our exhibition during the month of January on the fourth floor of the Furniture Exchange Bldg., Grand Rapids. Unless you intend to be with us this coming season,

it would be hardly of any use for you to continue on the road. We expect that you will attend to the January market during January, where we will take up the matter of the coming year in person. * * *"

"November 21, 1910.

"I have informed the trade from the first day that I started out of our exhibit in Grand Rapids, and I have many promises from same. I certainly will be in the Rapids for January, and when I finish my trip am going to try to run up to the factory and see you about next year."

"November 29, 1910.

"There is no use for you to make any further travels this season, you having made the trip as suggested. Kindly send us your final expense bill up to date and whenever you are near Detroit, we will arrange for starting in afresh the first of January. Regarding your first trip, it no doubt was late in the season and we hope it will be a benefit to you for next season."

"December 28, 1910.

"Yesterday we mailed you a $25 check to * * * Chicago, thinking that you were there. Inclosed find another $25 check to fulfil your request. We expect that when you get to Grand Rapids our samples will be there, as they were shipped yesterday and consigned to the Elston Storage & Packing Co. Our Mr. Strong and C. F. Ricken will be in Grand Rapids Monday or Tuesday. Wishing you a happy and successful New Year, we remain."

"January 28, 1911.

"We wish you success, which will no doubt come with hard work, as you are now acquainted, and the market has given us a certain amount of advertising. Keep your shoulder to the wheel, and you will meet with success. Awaiting your early reports, with lots of inclosed orders, we remain."

"February 6, 1911.

"It will be impossible for us to continue business on this basis as we certainly must have orders to offset expenses. As stated at our office, your sales for this season were not to cost us over 7 per cent. Therefore we hope that you will be able to send in orders regularly and also let us hear from you daily regardless

of where you are.   We will aid you in every way possible to effect sales, and we know that you have the ability and feel as though you ought to make good.
\* \* \*

"P. S.   Kindly send us your expense account since Jan. 1, 1911."

"Received your route sheet with expense account inclosed for January. \* \* \* These expenses are way beyond any we have had from our other traveling men.   We figure that we are to pay the hotel bills, railroad fares, car fares, etc. \* \* \* After comparing your sales with your expenses, it would be impossible for us to continue.   Therefore we think it would be more satisfactory to both for you to carry our line on a commission basis, together with another line. We will allow you 7 per cent. commission on all accepted orders received from you paying commissions on the 1st and the 15th of each month.   We certainly cannot continue on the present conditions. \* \* \* Your sales since Jan. 1, 1911, up to date are $490.45, and we have forwarded you $225; 7 per cent. of your sales is $34.33.   You can therefore see that the difference is $190.67.   If you were to continue at this rate, you can readily see the amount you would owe us at the end of the year.   If you cannot sell our line on a 7 per cent. commission basis, we would like to hear from you to the contrary."

"February 20, 1911.

"Inclosed find check for $50.   We have sent you letter to Marion, Ind. [previous letter quoted], which refers to conditions up to date.   We forwarded you this $50, but expect some results, as we cannot afford to forward more money than the amount of your orders.   We expect you to get busy and sell goods on a 7 per cent. basis to make up some of the lost time. We will try this for a few weeks longer, but, if we do not receive results, will have to go on a commission basis as referred to in letter which you will receive in Marion.   We do not want to make a change, and hope you will endeavor to make a showing, and we will assist you in every possible way, as you can readily see that the cost of selling is so high that we would be better off not making the territory unless we receive more orders.   If we do not get the orders, will be put on a commission basis. \* \* \* "

"March 3, 1911.

"In order to assist you, we will allow you $2,000 on the first $20,000 worth of goods you sell and 5 per cent. for all sold thereafter. This will give you a chance to make good. In other words, we will allow you 10 per cent. commission on all goods until you reach the $20,000 mark.  *   *   * "

"March 31, 1911.

"You are now very heavily indebted to us, and, as we do not think you can possibly make up, would be advisable for you to return photographs."

"April 3, 1911.

"Therefore kindly return our photographs, as you are now very heavily indebted to us."

Considerable importance is placed by the plaintiff upon a certain letter which he received from the defendant agreeing to pay him $25 per week for his services while he worked under the temporary agreement in the fall of 1910. This letter was introduced in evidence, and the plaintiff testified that the agreement in December was that he should continue at the same salary for the year 1911. This oral testimony, together with the contents of the letter, makes out a contract, but does not make out such a contract in writing as will satisfy the statute. The letters under date of November 14th and November 29th clearly indicate that a new agreement was to be made for the year 1911, and the plaintiff testified that on or about December 15th a new agreement was made; but the new agreement is partly in writing and partly in parol. Looking only at the correspondence, one is left in serious doubt as to how long the service is to continue, and what salary is to be paid. These are important elements in the contract, and they must not rest in parol. It is true there are some expressions used in the letters from which an inference might be drawn that a year was contemplated, and there are also some remittances to plaintiff spoken of in the letters which might carry an inference that he was to receive $25 per week; but the letters also con-

tain statements indicating that there was no fixed time and no fixed salary agreed upon.

If we are to give this section of the statute the construction which it ought to have in order to make it effective, and which it has heretofore received from this court, we must hold that the contract set up and relied upon was within the statute and therefore void. *Gault* v. *Stormont*, 51 Mich. 636 (17 N. W. 214); *Webster* v. *Brown*, 67 Mich. 328 (34 N. W. 676); *Baumann* v. *Lumber Co.*, 94 Mich. 363 (53 N. W. 1113); *McCaskey Register Co.* v. *Truettner*, 149 Mich. 241 (112 N. W. 909).

2. Should the case have been submitted under the common counts?

The plaintiff argues, and rightly so, that if he rendered services for defendant under a void contract, and he has not been compensated therefor, he may recover the value of them under the common counts. *Fuller* v. *Rice*, 52 Mich. 435 (18 N. W. 204). But that is not quite the question. The trial court did not deny plaintiff this right. What he held was that plaintiff's declaration did not include the common counts. Plaintiff's declaration originally was upon the common counts. He afterwards obtained leave to amend his declaration. He did not do so by adding a special count to his declaration on the common counts, but instead substituted his special count for the common counts. When an order is obtained granting leave to amend a declaration, the amendment in order to be effective must be actually made. *Ballou* v. *Hill*, 23 Mich. 60; *Harris* v. *Thomas*, 140 Mich. 462 (103 N. W. 863).

Plaintiff complied with this rule and made the amendment, and filed his declaration with only the special count, making no mention therein of the common counts. Therefore we must conclude that the common counts were no part of the amended declaration. It is unfortunate that a new suit should be

necessary to dispose of this matter, when by a second amendment the common counts could have been added to the special count, and the entire claim of plaintiff disposed of in this case; but, inasmuch as no application was made to the trial court to have this done, there is no alternative for us but to hold that the trial court was right in making the disposition of it which he did.

The judgment will be affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, MOORE, and STEERE, JJ., concurred.