## CLIFFORD A. LORENZ v. LEA G. LORENZ

26 So. (2nd) 54
May 7, 1946
Rehearing denied May 21, 1946

January Term, 1946
Division B

*Alfred E. Sapp,* for appellant.
*A. C. Franks,* for appellee.

THOMAS, J.:

From the assignment of errors and his brief it appears appellant considers that eight various orders and decrees entered by the court during the years 1942-1945 in this extensive litigation form a sort of cluster of mistakes on the part of the chancellors who rendered them. The present appeal was prosecuted from the last two of these. One decreed that the marriage ties binding the parties should be dissolved on the prayer of the cross-plaintiff, wife; adjudged $2,500 to be due her from the original plaintiff, husband, for accumulated unpaid alimony; fixed alimony of $100 a month thereafter; relieved the wife from any payments on a certain mortgage, and invalidated that instrument; declared the fee simple title to the mortgaged property to be quieted and confirmed in the wife. The other set aside a decree previously entered foreclosing the mortgage and invalidated the sale and order confirming it.

At the risk of being tedious, and believing that this will be the last occasion to deal with this dispute, we shall first give

a chronicle of this rather protracted controversy as we glean it from the transcript recently filed and the records lodged here when the matter was reviewed by this court on at least two other occasions, these having been made, by stipulation, a part of the record in this appeal.

Clifford A Lorenz brought suit for divorce against Lea G. Lorenz on 4 June 1938. She was immediately served with process, and on the rule day in the following month decree pro confesso was entered against her. A week later the plaintiff represented to the court that on 15 June 1938, a few days after the bill was filed but before the return day of process, the defendant had become mentally deranged, whereupon a psychiatrist had examined her and ordered her placed in Miami Retreat, where she was then "incarcerated." The physician, so it was reported to the court, considered her "mentally hysterical," though not absolutely insane, but he believed she was "probably . . . permanently deranged mentally." The chancellor was petitioner to appoint a guardian ad litem for her, which he did the following day. On 6 July the defendant was adjudged insane, and on the 3rd day of August the guardian ad litem was designated also guardian of the estate of Lea G. Lorenz.

Meanwhile, the day the decree pro confesso was vacated on stipulation, the guardian ad litem filed a motion to dismiss the bill on the ground that sufficient facts were not alleged to entitle the plaintiff to relief or to establish extreme cruelty on the part of the defendant. This motion was denied the same day, and some time thereafter the guardian ad litem answered. A month passed, and on 3 September 1938, defendant meanwhile being an inmate of Miami Retreat, the guardian ad litem and the solicitor for plaintiff appeared before the then chancellor who had signed the orders theretofore entered in the case, and testimony of the plaintiff was introduced. At this hearing no witnesses were offered in defendant's behalf, no objection was interposed to any questions asked the plaintiff or the witnesses who appeared for him. That same day the chancellor granted the husband a divorce, reciting, as to the material resources of the parties, that they had by their combined efforts accumulated a parcel

of improved real estate and an automobile. In the final decree he directed the guardian to determine an equitable division of the "joint property" and to report to the court "his findings . . . for . . . approval and ratification."

By testimony of the guardian himself at a hearing more than three years later, to which we shall presently allude, he "did not submit to the Court any matter of disposition of the property or division of the property" as commanded in the decree. Yet such division was attempted, albeit without the sanction of the court, 12 November 1938, when Lea G. Lorenz, who had not yet been restored to the status of a sane person but who had been freed from confinement in Miami Retreat, agreed to pay her one-time husband $350 for the car, to execute ten notes of $500 each payable to him yearly with interest from maturity, and to give him a mortgage on the real property to secure them. In exchange for the notes and mortgage he presumably conveyed to her his interest in this property, which was already encumbered by a first mortgage. Six days after this agreement between the parties, to which the guardian was not a party although he was present when it was signed, Lea G. Lorenz was adjudged sane. Some time passed; then this mortgage was foreclosed and the property was evidently purchased by the mortgagee.

This concludes the first chapter of this affair, and introduces the first appearance of the case in this court. State ex rel. Lorenz et al. v. Lorenz et al., 149 Fla. 625, 6 So. (2nd) 620.

After the mortgage was foreclosed, and of course after the divorce decree had been entered, Lea G. Lorenz complained verbally to one of the chancellors about the way her defense in the divorce case was conducted, during her enforced absence while an inmate of Miami Retreat, and about the subsequent foreclosure of the mortgage which she had executed as a part of the purported property settlement. This prompted the chancellor to issue a rule nisi requiring all parties to show cause why the decrees of divorce and of foreclosure should not be set aside because of fraud on the part of the husband. We examined this proceeding and decided that the method of assault was improper, that the decrees could only be attacked

by a bill of complaint, not by oral representation to the chancellor.

To proceed, in the order containing the rule nisi a new guardian had been appointed for Lea G. Lorenz, and he had immediately filed a formal petition in response to the rule seeking to have set aside the decree of divorce and to have stayed any further proceedings in that cause "until such time as the Defendant Lea G. Lorenz [might] be and became adjudicated sane in some proper and sufficient proceeding for the purpose," the petitioner assuming the position that the order adjudging her sane 18 November 1938 was defective.

After the opinion in the above case of State ex rel. Lorenz et al. v. Lorenz et al. was announced by this court the successor-guardian obtained permission of the court to amend the petition theretofore filed by him in response to the rule nisi so that it would constitute a formal attack upon the proceeding for divorce—that is, become a bill of complaint—and he asked too that his ward be joined in her individual capacity. Thus, whether the adjudication of sanity was valid or invalid, it was purposed that sufficient parties plaintiff would then be present in all events to maintain the assault on the decrees.

The present appellant filed an answer to the petition, which had now become a bill, and testimony was taken, with the result that on 23 July 1942 the chancellor set aside the decree of divorce. Five days later he allowed the appellee to file an answer and counterclaim in the divorce suit, and entered an order setting aside the decree of foreclosure. In August, 1945, another chancellor in the same circuit ordered the causes combined, and after two months had passed, the final decrees mentioned in the first paragraph of this opinion were signed. In tracing the many ramifications of this controversy we have encountered extreme difficulty because, to arrange the steps chronologically, we have been compelled to peruse no fewer than four transcripts. It will have been observed that two decrees were entered in the divorce suit, one after considerable testimony had been taken to determine the manner in which the original cause had been conducted, and another when the chancellor weighed, studied, and acted upon "the testimony of the witnesses before the masters in

both cases, *together with the testimony of the defendant and cross-complainant,* Lea G. Lorenz, *taken ore tenus before me,*" to quote the chancellor's recital. (Italics supplied.)

So it is manifest that when issue was formed upon petition, later styled bill, of guardian and of his ward challenging the regularity of the proceedings culminating in a decree of divorce and leading to the decree of foreclosure, the chancellor heard testimony about the circumstances surrounding the institution of the suit and conduct of it. He learned that it was started when the defendant was so disabled from a recent illness that she could not well defend herself; that she was incarcerated immediately thereafter; that the case progressed while she was thus incapacitated to appear or to consult with her counsel, or guardian; that a hearing was held at which the then guardian offered no testimony, made no objection to any questions propounded to the plaintiff or his witnesses, and only called the court's attention, without formal objection or protest, to the statute, Section 90.05, Florida Statutes, 1941, and F.S.A., providing that no party to an action "shall be examined as a witness in regard to any transaction . . . between such witness and a person at the time of such examination . . . insane . . . against the . . . assignee or committee of such insane person or lunatic." This law the then chancellor thought, without benefit, so far as we are advised, of argument or research, did not apply to divorce contests. It was decided in Edwards v. Rives, 35 Fla. 89. 17 So. 416, construing Section 1095, the Revised Statutes of the State of Florida (1892), which is identical with Section 90.05, supra, that the plaintiff in a suit was incompetent to testify about transactions between himself and the defendant who was then insane and represented by a guardian ad litem. So it appears that the statute would apply unless there is some reason for an exception in a case for divorce, and none has been pointed out to us.

Even assuming a case for divorce may proceed after the defendant spouse has been adjudged insane, a course which seems to be supported by some authorities, no reason occurs to us why the statute cited would not prohibit the plaintiff from testifying about the misdeeds of the defendant. When

the purpose of such a law, maintenance of equality and discouragement of false swearing, is borne in mind, it would seem that there is as much reason to apply it in a suit for divorce as in any other. The present case is a clear illustration of the injustice that may follow when a husband is allowed to testify unbridled while his wife languishes in an asylum.

From the record we think the chancellor was eminently correct in his view that the decree was not supported by admissible testimony, the stories of plaintiff's witnesses being of the flimsiest character, and the unfair advantage had been taken of appellee. In vacating the decree he evidently held the view that the original defendant, being then sane, could present her defense and counterclaim so the cause could be re-adjudicated. We do not find fault with such procedure. This decree setting aside the divorce decree was final as to the issues formed on the petition and bill, Lorenz v. Lorenz, 152 Fla. 779, 13 So. (2nd) 806, did not preclude the appellee, on whose behalf the assault was made, from presenting in the main case, she being then under no disability, such defense and prosecuting such claim as she would have made and presented in the first place had she been physically and mentally able.

We do not pause to discuss the distinction between a bill of review and an original bill in the nature of a bill of review for the reason that Section 21 of the Chancery Act, Section 63.21, Florida Statutes, 1941, and F.S.A., abolished "all technical forms and classes of bills, answers and other pleadings in equity . . . " We conclude our observations on this phase of the case by announcing that we discover no error on the part of the chancellor in his ruling on this aspect of the case.

Nor in adopting this view do we see any occasion to distinguish between the decree of foreclosure and the one of divorce, although the procedure was slightly different, a defense having been presented in one but not in the other. They were so closely allied that the divorce decree could hardly fall without carrying the other with it. As a matter of fact, the foreclosure was an offshoot of the divorce, being an en-

forcement of a mortgage given pursuant to what we consider an abortive property settlement.

The chancellor in the final decree of divorce had authorized the guardian serving at the time to investigate a division of the common property and make a recommendation for his consideration. He made no such report; he did not even sign for his ward the agreement of property settlement. The memorandum was executed only by the plaintiff and the defendant while her status was still that of an insane person. So the mortgage was not only invalid because the outgrowth of a divorce which was in itself invalid, but also because it resulted from an arrangement between the mortgagee and an incompetent mortgagor. What we have said about the close kinship of the two decrees, a view which is not greatly at variance with appellant's as expressed in his brief that "the cases are so related that the Court cannot very well pass on the merits of one without passing on the merits of the other," disposes of the order of consolidation.

Appellant insists that error was committed when a judgment for $1,200 was entered against him. In the course of the litigation he had been ordered to pay alimony of $100 monthly. It is urged that proper notice of the hearing at which this amount was fixed was not served, but we have not found the position sustained by the record. It does appear that a year later the accumulated alimony was computed to be $1,200, and execution was ordered to issue. We refer in the beginning to a provision in the final decree computing this amount at $2,500. Inasmuch as in both decrees relating to alimony in arrears reference was made to the same order fixing the amount we shall assume that the final decree incorporated the other and that there was then an adjudication of the full amount due. We shall assume too that the chancellor was thoroughly familiar with the rule set out in Robinson v. Robinson, 154 Fla. 464, 18 So. (2nd) 29, that allotments for alimony are not liens because indeterminate and subject to adjustment, but may become judgments if after default a competent court determines and adjudges the amount then due.

It will be remembered that some of the testimony on

which the final decree was based was taken orally before the court. This part of the record is not before us, and we shall presume that the chancellor then heard evidence ample to justify the judgment for the unpaid alimony in harmony with the announcement in Robinson v. Robinson, supra. If the appellant proposed to attack this feature of the decree on the ground of deficiency of such testimony he should have made the record complete by invoking the rule in Section 45 of the Chancery Act, Section 63.45, Florida Statutes, 1941, and F.S.A., which expressly provides that evidence taken orally before the court "shall, upon motion of either party, . . . be taken down in writing and filed in the cause."

Thus far we have discovered no error which would occasion our interference with the disposition of the case, but one point presented by the appellant seems well taken, and that is the failure on the part of the appellee to serve a copy of the counterclaim as required in Section 35(3) of the Chancery Act, Section 63.35(3), Florida Statutes, 1941, and F.S.A. This language appears there: "If the answer asserts a counter-claim and seeks affirmative relief, a copy thereof shall be served within ten days after filing (unless further time be allowed by the court) upon the solicitor of record (if any) of the party or parties as to whom the counterclaim and affirmative relief is asserted." If the claim is made against persons not parties to the suit or against parties not yet served with process or who have been served and are not represented by counsel, process is needed to bring them into court. The certificate of the clerk of the circuit court of Dade County attached to the latest transcript contains the unequivocal statement that "as appears from the files and records in my office, said Cross-Bill and Counter-Claim was not served on the Plaintiff or his counsel, that no pleadings were filed by the Plaintiff in response to said Cross-Bill and Counter-Claim, that no Decree pro Confesso was entered thereon, and that neither the Plaintiff nor his counsel were given any notice of final hearing" before the chancellor. We are unable to reconcile the procedure with the provisions of the statute, or to discover any step taken by appellant that waived or dispensed with the requirement of service. Counsel

for appellee is content to dismiss the challenge with the statement that service of the answer upon the original counsel for appellant was sufficient, but we cannot find in the record where this was done, and the certificate of the clerk contains the express statement that it was not. He takes, too, the rather remarkable position that notice was waived by a telegram, which we shall discuss, from appellant seeking "additional time in which to answer the petition for temporary alimony, as well as the proceeding on the cross bill . . . ," to quote the brief.

Ten months after answer containing the counterclaim was filed, the attorney for appellee served notice on the original attorney for appellant that he would call before the chancellor "the application for attorney's fees herein, Court costs, and the expenses in the above entitled cause." The latter attorney addressed a response to the court casting grave doubt on his authority further to represent the appellant. The former attorney then served notice on the defendant, now appellant, himself at three different addresses in Michigan that the application, described precisely as we have quoted it, would be presented to the chancellor on 12 July 1943. In reply to this, the telegram which counsel now says amounted to a waiver was sent by appellant to the chancellor. It read: "HAVE BEEN UNABLE TO CONTACT MY ATTORNEY FRANK B DOWLING [who had questioned his own authority] PLEASE POSTPONE CASE NO. 62624 TO BE CALLED ON JULY 12 FOR A REASONABLE TIME UNTIL I CAN OBTAIN COUNCELS [sic]. UNABLE TO APPEAR PERSONALLY BECAUSE I AM SUBJECT TO 24 HOUR CALL IN THE ARMY."

Now it is patent from the notice to which the telegram was a reply that no mention whatever was made of the cross bill or counterclaim which had been filed nearly a year before. It contained no language advising the addressee that anything but fees, costs, and expenses would be considered, and they could be fixed without the necessity or even presence of a counterclaim.

We can find nothing in the record to cure this defect in the procedure, and we feel constrained to reverse the de-

cree, with directions to take such testimony, after the answer embodying the counterclaim is served, as may be offered by the parties, and to enter such decree as may be justified after notice of final hearing.

We are not ignoring appellant's complaint that, although his mortgage was set aside, the appellee was not required to reconvey to him that which had been deeded to her in exchange for the mortgage. Whether it was decided on testimony not available to us that he was not entitled to a reconveyance, if he did in fact transfer his title to her, we do not know. This problem may easily be solved by the chancellor when he finally disposed of the case.

Affirmed in part; reversed in part.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.

