WADE *vs* KILLOUGH et al.

1. *It seems*, that the statute, authorising the assignment of many breaches, in acitions on bonds,* is to be construed as permiting only as many breaches to be assigned, as there are distinct stipulations, or things to be done; and that, under it, more than one breach can not be assigned to each stipulation. *sed quare.*

2. Whether improper assignments of breaches, in the condition of a bond, would be fatal on general demurrer, *quare.*

3. A plea to an action upon a bond, conditioned to execute titles at a particular day, averring that titles were made, but not showing at what time—whether before the commencement of the action; would, *it seems*, in a proper case, be considered defective.

4. But it seems, also, that such a plea, if faulty, would be excused, by a defective assignment of breaches.

5. That a plea to an action upon a title bond, averred an execution of the titles, by the defendant, *and a stranger*—held not to be objectionable, because of the introduction of the name of the latter in the plea.

6. One who becomes the vendee of real estate, and takes a bond for title, is bound to prepare and tender a conveyance to the vendor.

7. It is a good plea, in an action, by a vendee of real estate, on the title bond, where the latter has not prepared and tendered a conveyance, that the vendor was ready to convey on the day specified in the condition.

8. In such case, the plea need not aver a tender, by the vendor, of the abstracts of title: it being the duty of the vendee, to demand such abstracts, if necessary, for the preparation of the conveyance.

9. *It seems*, that in a proper case, the failure of a vendor of real estate, to furnish the abstracts of title, when required, to prepare a conveyance, would be considered an infraction of his his title bond.

*Aikin's Digest, page 273, §81.

10. Where a vendee of real estate, holding a title bond, conditioned for the execution of titles, fails, *at the day* specified in the condition, to tender a conveyance, the vendor is not discharged from his obligation—for the vendee may apply and tender a conveyance, after the day named in the obligation.

This was an action of debt, in Jefferson Circuit Court, (whither it had been transferred from the County Court, by consent,) by Reuben Wade, against David Killough, Allen Killough and George B. Killough: and the cause of action was a bond, in the penalty of four thousand five hundred dollars, executed by the defendants, to the plaintiff, and conditioned to execute land titles to certain premises, on or before the twenty-fifth day of December, one thousand eight hundred and twenty-eight.

The declaration disclosed the bond and condition at length, and assigned numerous breaches of the condition, to wit:

*First*—That the said defendants did not, on or before the twenty-fifth day of December, one thousand eight hundred and twenty-eight, make to the said plaintiff, a good and sufficient title to the lands described in the said bond; but wholly neglected and refused.

*Secondly*—That the said defendants, or either of them, did not, nor would, on or before the twenty-fifth day of December, one thousand eight hundred and twenty-eight, make, nor had they, or either of them, since that day, made, to the said plaintiff, good and sufficient title to the said lands: but, so to do, had theretofore refused.

*Thirdly*—That, at the time of the making of the said writing obligatory, and the condition thereof,

nor on the twenty-fifth day of December, one thousand eight hundred and twenty-eight, had the said defendants, nor either of them, a good and sufficient title to the said land; and so they, on the said twen-fifth day of December, one thousand eight hundred and twenty-eight, did not, nor could, make to the said plaintiff, a good and sufficient title to the said land, as they, by the said writing obligatory, and condition, were bound to do.

*Fourthly*—That, on the twenty-fifth day of December, one thousand eight hundred and twenty-eight, or at the commencement of this suit, the said defendants or either of them, had no good and sufficient title to the said lands; and so they, the said defendants, on the said twenty-fifth day of December, one thonsand eight hundred and twenty-eight, nor before the commencement of this suit, did not, nor could make to plaintiff, good and sufficient titles to said lands.

*Fifthly*—That after the making of the said writing obligatory, and after the twenty-fifth day of December, one thousand eight hundred and twenty-eight, and before the commencement of said suit, to wit, on the eighteenth day of January, one thousand eight hundred and thirty, at the County aforesaid, the said plaintiff requested the said defendants to make to the said plaintiff a good and sufficient title to the said lands, which the said defendants then and there refused to do.

*Sixthly*—That after the making of the said writing obligatory, and after the twenty-fifth day of December, one thousand eight hundred and twenty-eight, and before the commencement of said suit, to

wit, on the eighteenth day of January, one thousand eight hundred and thirty, the said plaintiff requested the said defendants to make to said plaintiff a good and sufficient title to said lands, named in said writing obligatory and condition, and then and there offered to prepare or cause to be prepared such title, for defendants execution—which the said defendants then and there refused to do.

*Seventhly*—That after the making of the writing obligatory, and after the twenty-fifth day of December, one thousand eight hundred and twenty-eight, and before the commencement of said suit, to wit, on the eighteenth day of January, one thousand eight hundred and thirty, the said plaintiff requested the said defendants to make to him, good and sufficient titles to said lands; and that plaintiff then and there caused to be prepared a title deed to the said lands, ready to be signed and sealed by the said defendants—which said deed so prepared, the said defendants refused to execute: and refused to make to the plaintiff, any other title whatever, &c. Whereby the said cause of action aforesaid, had accrued, &c.

And the said defendants, David Killough, Allen Killough and George P. Killough, came and defended the wrong and injury, when, &c., and craved oyer of the said writing obligatory, and of the said condition, and they were read. And the defendants, having seen and heard the same, said, that the said plaintiff ought not to have or maintain his aforesaid action thereof against them, because, they said, that the said David Killough, Allen Killough and George P. Killough, together with one Isaac Killough, did

make to him, the said plaintiff, a good and sufficient title to the said lands, according to the true intent, spirit and meaning of the condition of the said writing obligatory, as above set out: and, of this, they put themselves upon the country.

And, for further plea in that behalf, according to the statute, &c., said defendants said *actio non*, because, they said, that they, the said defendants, after the making of the said obligation, that is to say, on said twenty-fifth day of December, one thousand eight hundred and twenty-eight, were ready and willing, and had, at all times been ready and willing, and do hereby offer to make to the said plaintiff, good and sufficient titles to the said lands, according to the true intent and meaning of the said obligation, and the condition thereof; and this they were ready to verify: and they prayed judgment, if the said plaintiff should have or maintain his said action thereof against them.

And for further plea in that behalf, the said defendants said, *actio non*, because, they said, at all times, since the making of the said obligation above set forth, they, the said defendants, have been ready and willing, on their part, to make title to the said lands; that they were then ready and willing to make titles, according to the spirit, true intent and meaning of the said condition, in said *covenant;* but that the said plaintiff hath never demanded the same; and this they were ready to verify: wherefore they prayed judgment, &c.

And, for further plea the said defendants said, *actio non*, because, they said in fact, that the said supposed writing obligatory was executed by them, the

said defendants, to said plaintiff, upon a sale, by defendants, of the said lands; that upon the day, and at the time of the execution of the said supposed writing obligatory, to wit, on the third day of March, one thousand eight hundred and twenty-seven, the said plaintiff, as a condition of said sale, executed to one of the defendants, to wit, David Killough his certain promissory note, for the sum of eighteen hundred and seventy-five dollars, to be paid to the said David Killough or bearer, on the said twenty-fifth day of December, one thousand eight hundred and twenty-eight; and then and there delivered the said promissory note to the said David Killough, in part payment of the said lands: and the defendants further said, that although they were ready and willing, on their part, on the said twenty-fifth day of December, one thousand eight hundred and twenty-eight, and had ever since, been ready and willing to make good and sufficient titles of the said lands, according to the spirit, true intent and meaning of the said condition of the said writing obligatory—yet the said plaintiff did not, on the said twenty-fifth day of December, one thousand eight hundred and twenty-eight, nor at any time afterwards, pay or offer to pay to the said David Killough, the said sum of money, in the said note specified, or any part thereof; and this they were ready to verify, and prayed judgment, &c.

To these several pleas the plaintiff demurred; and the demurrer coming on to be heard, the same was sustained, as to the *fourth* plea, and overruled, as to the *first*, *second* and *third* pleas. And, the plaintiff refusing to reply, judgment was entered for defendants.

The plaintiff, by writ of error, now came into this Court; and said, that the Court below erred, in overruling the demurrer to the first, second and third pleas aforesaid.

LIPSCOMB, C. J.—This was an action of debt, brought in the County Court of Jefferson County, and transferred, by consent of parties, to the Circuit Court.

The action was founded on a penal bond, the condition of which was, that it was to be void, if the defendants made the plaintiff, on or before the twenty-fifth day of December, one thousand eight hundred and twenty-eight, a good *"and sufficient"* title to four half quarter sections of land, designated by their numbers, and according to their legal subdivisions.

The plaintiff assigned seven breaches of the condition of the bond. The defendants, after craving oyer of the condition of the bond, plead, first, in substance, that they had, together with one Isaac Killough, made a good and sufficient title, according to the true intent and meaning of the said obligation. The second plea of the defendants, is in the following words: "And for further plea, in this behalf, according to the statute, &c. said defendants say *actio non*, because, they say, that they, the said defendants, after the making of the said obligation above stated and set forth, in the said plaintiff's declaration, that is to say, on the said twenty-fifth day of December, one thousand eight hundred and twenty-eight, at, to wit, in the County of Jefferson, aforesaid, were rea-

dy and willing, and have, at all times been ready, and do hereby offer to make to the said plaintiff, good and sufficient titles to the said several tracts or parcels of land, above stated and set forth, in the said plaintiff's declaration, according to the spirit, true intent and meaning of the said obligation, and the condition thereto attached, at, to wit, in the County of Jefferson aforesaid; and this they, the said defendants are ready to verify."

The third plea averred a readiness and willingness to make the titles; but, that the plaintiff had never demanded titles.

To these pleas a general demurrer was filed, which was overruled, and the plaintiff declining to take issue, or reply, the Court rendered judgment in favor of the defendants—which judgment is now sought to be reversed.

We shall not decide on the right of the plaintiff to assign more than one breach to the same stipulation. The condition of the bond sued on, is composed of a single stipulation, and the plaintiff has assigned seven breaches: this, in argument, he contended he had a right to do, under our statute. But it is questionable, whether our statute intended to do more than authorise as many breaches to be assigned as there were distinct things to be done. In this aspect, the statute is a beneficial one, because it avoids a multiplicity of suits, for the recovery of distinct damages, for each breach.

The allowance of more than one assignment to each stipulation, would be productive of much perplexity in pleading, without affording any adequate

benefit, as it would not increase damage; and the defendant can not be held liable for a supposed breach, not within his covenant.

In this case, one breach would have been sufficient to embrace the fact of a failure to make the good and sufficient titles; and yet there have been seven assigned, some of them clearly not within the contion of the bond. But as we decline deciding on the plaintiff's right to multiply his assignments, we shall likewise decline saying whether his bad assignments should be held fatal on general demurrer.

The first plea of the defendants was objected to, on two grounds, by the plaintiff. The first, that it did not plead performance in the terms of the condition; and, secondly, that it introduced a new party to the performance plead: that is to say, the defendants, and one Isaac Killough, had made good and sufficient titles to the plaintiff, for the tracts or parcels of land specified and designated, in the condition.

There is certainly an uncertainty or an evasiveness in the first plea—it may be true, and yet not an answer to the action. It may be true, that good and sufficient titles may have been made, at the date of the plea; and not at the time specified by the bond, or not even before the commencement of the action. If it had averred performance, before the commencement of the suit, it would, at least have been a good answer to one of the plaintiff's assignments; and, whether a good answer to the condition of the bond, or not, I can not see how the plaintiff could have objected. Such plea, if faulty, would be excused by the defective assignment; but, as before

observed, it does not show, that the titles were made before the commencement of the suit.

The objection, that another person, not known to the bond, joined in making title, is not believed to be sustainable: the title, if good without the additional name of Isaac Killough, could not be vitiated by his name. So far as the personal obligation of the makers of the deed, to perform its covenants, are to be taken into view, the security was not diminished, but enhanced.

The second plea avers a readiness and willingness to make titles, on the day named in the bond. I am not apprised of any precedent for a plea of this kind, in any action, brought on a penal bond, conditioned to make titles. I presume, that such bonds are not frequent in England, nor in the old States of this Union; but, in this State, the highest evidence of perfect title to most of our land, issues from the head of our federal government; and, in consequence of the vast quantity of land sold by the government, it frequently happens, that perfect title can not be obtained, for years after the purchaser has acquired a right; and, in the mean time, a contract of sale is often made—and, the most that can be done, is to give bond, to make title; at least, this is most usually done.

But, I apprehend, that the soundness of the plea may be tested, in this way.—If it was the duty of the plaintiff to present such titles as he was satisfied with, to the defendants, for execution, before he could claim a forfeiture of the bond, then the plea would be good—because, under that view, the defendants could not perform, until a presentation

had been made to them, of the titles, for them to execute.

In Sugden on Vendors, 182, the doctrine will be found laid down, that it is the duty of the purchaser to prepare and tender the deeds. The author thinks it was formerly otherwise, when the simplicity of the common law reigned, and possession was the best evidence of title: and, he says, the rule had been rendered somewhat doubtful, by some recent *dicta,* that the vendor should prepare and tender titles.— But, the author says, the point came distinctly before the Court of Exchequer, in a late case, and it was, in conformity to the present practice of the profession, decided, that the purchaser, and not the vendor, is bound to prepare and tender the conveyance. The case he refers to, is *Baxter vs Lewis.*[a] And, he says, the same rule had been expressly recognized by *Windham,* Justice, and denied by no one.[b]

The same author, continues—"It is settled, that if the conveyance is to be prepared at the expense of the purchaser, he is bound to tender it.— *Seward* vs *Willock.*[c] Now, it is admitted, on all hands, that the expense of the conveyance must be borne by the purchaser, if there be no express stipulation to the contrary. Therefore, when there is no such stipulation, the purchaser is bound to tender the conveyance." He says, farther, that " although it should only be declared, that the conveyance should beat the expense of the purchaser, he would be required to prepare the conveyance."

It would seem that the result of an application of these principles, would be, that if the covenant was dependant, and the purchase money to be paid

*Forr. Exc. Rep 61.

*1 Lev. 44.

*5East.198

at the same time that title was to be made, the vendor might maintain an action, without tendering a conveyance.[a] And, farther, the result would seem [3 East.410] to be, that when the vendor undertook to convey on a particular day, a readiness to convey on that day, would be a good plea, if the purchaser had not tendered the conveyance.

In argument, an objection was taken to the plea of readiness and willingness to convey, at the day— because it did not aver, that the defendants had given an abstract of their titles. When the title was complicated, and had to reach far back, and recite the different *mesne* conveyances, and incumbrances with which it was charged, an abstract of the vendors' title was essential, to enable the purchaser to prepare title.

There can not, however, be the same necessity, with us; our titles are mostly derived from the government, and all of a recent date: and the description in this case, in the condition of the bond, is a sufficient abstract of title, to enable the purchaser to prepare the conveyance. The number of the section, of which the half quarter is a sub-division with the number of the range and township, is a sufficient description of its locality. But if an abstract ought to be furnished, it will be seen, by a reference to the English practice, that it should have been demanded by the purchaser from the vendor, at such time as he required it, for the purpose of preparing the conveyance.

There is no question, but the vendor is bound to furnish all the information the purchaser may require, to enable him to have a correct draft of the

conveyance made out. The uniform practice in England, has, no doubt, been, for the purchaser to make out the conveyance. A different practice has, perhaps been adopted, in some of the States of the Union; but custom has established no law, on this subject, with us. And we are now called upon, to say, whether we will disregard the common law, on this subject, and lay down a different rule. Many rules of the common law, are founded on a state of things that can not exist in this country: and it would often be doing serious injustice, to apply the principles of the common law, to such new state of things.

It would seem, that in such cases, the maxim, "*Cessante ratione, cessat et ipsa lex*"—the reason having failed, the law has also ceased,) should be applied.

Now, there may be good reason for abandoning the English practice, of making out a formal abstract of titles, found, in the fact, that such is the simplicity of our titles, that a contract of sale, in most cases, would give all the information necessary to the conveyancer, in drawing out the conveyance. If, however, there should be an exception, no one would question, but it would be the duty of the vendor, to furnish the requisite information : and the failure to do so, when required, would be an infraction of his bond.

There does not, however, seem to be the same reason, and certainly, no urgent necessity, from any state of things existing here, so to change and discharge the purchaser from his obligation, to make out and tender the conveyance, as to require this to be done by the vendor. And there is one reason,

why the title should be made out and tendered by the purchaser, stronger, in this country, than any one that existed, perhaps, in the country where it originated.

The purchaser generally acquires the possession, with the bond to make titles. This bond is assignable, by our statute : the purchaser may assign the bond to a stranger, and the vendor may not know where to apply, to make a tender of title. If the purchaser should not apply at the day, it would not discharge the vendor from his obligation—he might apply after the day, with his conveyance, and the vendor would be bound to execute it. If, however, he applied on the day and tendered a conveyance, and the vendor refused, this would amount to a breach. So, if after the day.

But, if we establish a different rule, the vendor, if he fails to convey on the day, (and this would often be the case, from not knowing where his bond was,) could not, in a Court of law, discharge himself from the penalty of the breach of his obligation, by making title after the day. There is much good reason, therefore, for continuing the rule, that the purchaser shall prepare and tender the deed, before he shall be allowed to claim the forfeiture from the vendor.

I have said before, that such bonds, as the one on which this suit is brought, are not common in England. From the books, it appears to be the practice, to make a contract of sale, and make a deposit, by way of earnest, of a part of the purchase money ; and, if there is a failure to make titles, the purchaser applies to withdraw the deposit, and, if the contract will authorise, sues, likewise, for da-

mages.    Or, he files his bill in Chancery, to compel a performance.    But he can neither demand the deposit, nor file a bill for a specific performance, until he has tendered a conveyance.

One of the most marked differences, however, in the practice in England and in this country, is, as before intimated, that the possession, here, almost invariably accompanies the bond for titles, and there, possession was rarely given, until the conveyance was executed; and this difference would seem to claim an indulgence to the vendor, because the purchaser is in possession, and enjoying the benefit of the purchase, and can not be, often, in any way prejudiced by the conveyance not being made on a particular day.

We are, therefore, of the opinion, that the second plea is good : and this being sufficient to affirm the judgment, we omit inquiring into the sufficiency of the other pleas.

Judgment affirmed.