# Hughes *v.* Hatchett & Trimble.

*Appeal from Order for Appointment of Receiver.*

1. *Rents and profits of land, as between vendor and purchaser, or mortgagor and mortgagee; and when receiver thereof may be appointed.*—When the vendor of lands, retaining the title in himself, executes to the purchaser a bond conditioned to make title when the purchase-money is paid, and puts him in possession, his position towards the purchaser is that of a mortgagee towards the mortgagor; and in such case, the rents and profits of the land belong to the purchaser, and can not be subjected to the payment of the purchase-money before the lien on the land is enforced. But, when a bill is filed to enforce the vendor's lien on the land, or to foreclose the mortgage, if it is shown that the land itself is not a sufficient security, and that the purchaser or mortgagor is insolvent, the court may appoint a receiver of the rents and profits.

2. *Receivers; in what cases appointed.*—In the appointment of receivers, registers and chancellors should act with great caution, and should not interfere at the instance of a creditor, whose debt is disputed, so as to give him in effect an attachment against the property of his debtor, without security; nor should a receiver be appointed, except in very rare cases, or where the party asking for it has some specific lien on the property, without requiring security to protect the adverse party against injury.

APPEAL from the Chancery Court of Elmore.
Heard before the Hon. CHARLES TURNER.

[Hughes v. Hatchett & Trimble.]

This is an appeal from an order appointing a receiver, and is a branch of the case between the same parties, reported *ante*, pp. 539–47, which see. The material facts are stated in the opinion of the court, and in the former report.

R. M. WILLIAMSON, for appellant.—Hatchett & Trimble, having the legal title to the land, could enter, and thus secure the rents and profits. The appointment of a receiver is an extraordinary remedy, and is only granted in cases of absolute necessity.—High on Receivers, §§ 639 *et seq.*, and authorities there cited.

E. J. FITZPATRICK, *contra.*—The right of a mortgagee, in a suit for foreclosure, to have a receiver of the rents and profits, where the property is not sufficient to pay the debt, and the defendant is insolvent, is settled in the following cases : *Bank of Ogdensburgh v. Arnold*, 5 Paige, 38 ; *Sea Insurance Co. v. Stebbins*, 8 Paige, 565 ; *Howell v. Ripley*, 10 Paige, 47 ; *Astor v. Turner*, 11 Paige, 436 ; *Frelinghuysen v. Colden*, 4 Paige, 204 ; *Shotwell v. Smith*, 3 Edw. Ch. 588 ; *Warren v. Governeur's Ex'rs*, 1 Barbour, 36 ; *Syracuse Bank v. Tallman*, 31 Barbour, 207 ; *Hyman v. Kelly*, 1 Nevada, 183 ; *Henshaw v. Wells*, 9 Humph. 582. The cases which hold that a party is not entitled to a receiver, when he holds the legal title, are based on the principle, that he has an adequate remedy at law by ejectment. These cases may be correct, where the bill is filed for a receiver in the first instance ; but they can not apply where the purpose of the bill is a foreclosure and sale. A strict foreclosure, as under the English practice, is an equitable ejectment, and the party holding the legal title may well be remitted to his legal remedy. But a strict foreclosure is unknown in our practice, which requires a foreclosure by sale, and the payment of the surplus proceeds to the mortgagor. Having acquired jurisdiction, under a bill for foreclosure and sale, the court will go on, and do complete justice between the parties.—*Stow v. Bozeman*, 29 Ala. 397 ; *Scruggs v. Driver*, 31 Ala. 274 ; *Stewart v. Stewart*, 31 Ala. 207 ; *United States v. Myer*, 2 Brock. 516 ; *Clarke v. Matthewson*, 12 Peters, 171. Ejectment would not furnish an adequate remedy, when the defendant is insolvent, since the rents accruing while the action is pending would certainly be lost.

MANNING, J.—In 1874, appellant, Hughes, bought a tract of land of appellees, for $5,000, payable in five annual installments, for which he executed to them his several promissory notes, the first payable the 1st of January, 1875, and the

others bearing interest from that date. They executed a bond to convey title to him when the notes should be paid; and he went into possession. In April, 1875, they, as complainants below, filed their bill to have the land sold to pay the note first due, which, they alleged, remained wholly unpaid. This note was for the sum of $500, and the others for $1,125 each, with interest as aforesaid. An answer was filed, but not under oath—that having been waived by complainants. In August afterwards, complainants filed a petition, praying for a receiver to be put in possession of the land, and to receive rents from persons who were cultivating it under contracts to pay rent; the petition alleging, that he, Hughes, was insolvent; that petitioners are informed and believe that the land is not, and will not be when sold, of sufficient value to pay the notes; that it is leased out in parcels to different persons, from whom a considerable sum in aggregate will be paid as rent; that if any part is not leased out, it is in his possession; and that, without an application of the rents to pay the notes, the security will be insufficient. In answer under oath to the petition, defendant, Hughes, alleges that much the larger part of the note first due is discharged by the action of petitioners in authorizing tenants that were on the lands under them, and whose rents were to be paid to him, to pledge their crops by contract to other persons, to the injury of respondent; and he denies that he is insolvent, or that the lands are, or will be an inadequate security, and avers, on the contrary, that he is able and willing to pay whatever decree shall be rendered against him, and that the lands are ample to pay any such decree, and are more valuable than they were when he bought them.

The decision of the register, made in September, appointing a receiver, seems to have been founded on no evidence, but that which is contained in the petition and answer, the former sworn to by complainant Trimble, and the latter by defendant Hughes. There are, it is true, in the record, some depositions which were taken in November; and which may have been used before the chancellor, in December, when he affirmed the order of the register. But the only depositions touching the matter of the motion are those of Trimble and Hatchett, the appellees; neither of whom say a word against the solvency of Hughes, and both of whom testify that the land was sufficient security. The former, Trimble, says of the property: "Six thousand dollars is the lowest estimate of the value of said lands, and five hundred dollars a proper estimate of their rental *per annum*." And Hatchett says: "I consider the land remarkably cheap at five thousand dollars, and the rent, five hundred dollars, cheap."

The relation of complainants to the defendant was that of mortgagees toward a mortgagor; the former retaining the title of the land they sold in themselves, to secure payment of the purchase-money, when due as agreed on, instead of conveying it to the purchaser, and then taking it back for the same purpose by deed from him. When the purchaser is put in possession of the premises thus sold, and the mortgage is of the land only, he is entitled to the rents and crops for his own use, until the mortgage security is enforced. The lien does not attach to the intervening issues and profits. It is only by special action or proceedings that they will be appropriated to pay the mortgage debt, before a sale of the land itself; and a suit in equity, brought to have them so applied, could not be maintained, where, as in the present instance, the legal title is in the mortgagees. They have their action at law. But, when the suit in equity is brought for a foreclosure sale of the mortgaged property, it is within the competency of that court, having jurisdiction of the case already, to appoint a receiver to take possession of the rents and profits, for the benefit of the mortgagee, upon its being shown that the land mortgaged is not an adequate security, and that the mortgagor is insolvent. These facts must be shown, to justify the interference—not to be tolerated, except for very good reasons—of taking a man's property away from him, and putting it into the charge of an officer of the court. "The rule," says Edmunds, J., "where the mortgagee has not taken care to keep down the accruing interest, by securing a lien on the rents and profits, is to interfere with the mortgagor's possession, prior to a decree of foreclosure, and appoint a receiver of the rents and profits, when the premises are an inadequate security, * * and the mortgagor, or other person in possession, who is personally liable for the debt, is not of sufficient ability to answer for the deficiency." In the case in which this was said, there was no doubt of the insolvency of the mortgagor; but, because it did not appear that the mortgaged property was not sufficient security, he held that the mortgagees were not entitled to a receiver.—*Warner v. Governeur's Ex'or*, 1 Barb. S. C. 39; *Syracuse Bank v. Tallman*, 31 Barb. 208-9; *Bank of Ogdensburg v. Arnold*, 5 Paige, 38.

According to this last case, where the mortgage debt, as in the present instance, is payable by installments, and some of these are not yet due, and the security is ample for those that are due, the mortgagee would not, ordinarily, be entitled to a receiver, to take possession of the mortgaged property, or of the rents and profits, because they might be necessary to pay the installments to mature in the future.

Whether it would not be an exception to this rule, if it were shown that the property could not, without great loss to all parties, be sold in parcels, but must be sold entire for the payment of the first installment, we need not now inquire. For, although an amendment appears to the bill, filed in December, 1875, alleging the necessity in this case of such a sale of the property entire, it came in too late to be answered, or to form part of the proceedings upon the motion for a receiver; and there was no affidavit, or other evidence, to support the allegation. Indeed, the power in question ought to be used with great caution. We think it our duty to admonish registers in chancery of this. To take a man's property away from him, and deliver it to another, to have charge of at the expense of the owner, is no light matter. Rarely, if ever, ought it to be done, unless the party applying for it has clearly a matured specific lien upon the property, or is a partner with the former in the ownership of it, or has the rights of a partner with him in it, and the liens arising from that relation, or unless security be given to protect the adverse party from injury. Especially should the power not be exercised, so as to give to a creditor, in effect, and without security against the abuse of it, an attachment on property as a provision to insure the payment of a disputed debt. The statutes prescribe certain securities that must be required before a creditor will be entitled to either an "equitable attachment," or an attachment through a court of law, upon his debtor's property; and in analogous cases in chancery, the rule should be observed, that " equity will follow the law." Registers and chancellors can not be too watchful, to prevent suitors from getting, in effect, the benefit of such attachments, without incurring the responsibilities, and executing the indemnifying bonds which the law considerately exacts from those who seek to create a lien upon the property of others, or to recover it from them as their own. These remarks are general only, and not intended as a criticism upon the action of the register or chancellor in this case.

Let the order of the register, appointing a receiver in this cause, and the order of the chancellor affirming it, be set aside and vacated, and the petition be dismissed, at the costs of the petitioners in this court, and in the court below.