(104 So. 239)
BAKER v. HOWISON. (2 Div. 832.)

(Supreme Court of Alabama. April 16, 1925.)

**1. Vendor and purchaser 140—Abstract of title may be required by express terms of contract.**

An abstract of title may be required by express terms of contract, or to extent of necessity of case, for purpose of proper conveyance to be tendered by vendee on demand of vendor.

**2. Vendor and purchaser 140—Duty of purchaser to provide abstract of title where no agreement as to it made.**

Question whether vendor or vendee is to prepare or should prepare abstract of title should be made certain by contract of sale, and, if parties make no agreement as to abstract of title, it is incumbent on purchaser to provide abstract and to satisfy himself of condition of title.

**3. Vendor and purchaser 140—Vendor not required to furnish abstract of title unless expressly stipulated in contract.**

A commercial abstract of title may only be required at vendor's expense, by express terms of contract.

**4. Contracts 10(1)—Both parties to a contract must be bound by its terms, or neither is bound.**

Both parties to a contract must be bound by its terms, or neither is bound.

**5. Contracts 10(1)—Contract binding only one party to perform certain obligations is unilateral and revocable before performance of such act.**

When one is bound by alleged contract to do something when other party does some other stated act, but contract contains no promise of other party to do anything or forego any obligation, it is unilateral, without mutuality, and revocable at any time before party to whom it is addressed performs any act on faith of said contract.

**6. Vendor and purchaser 128—Implied that good title will be made in absence of contrary stipulation.**

In absence of contrary stipulation, every contract for sale of real estate implies that a good title will be made.

**7. Contracts 10(5)—Contract for sale of land held not mutually binding until approval of title by vendee.**

Under contract whereby vendee was to make a cash payment on approval of title and delivery of deed, approval of title was condition precedent to payment and delivery of deed, and, until vendee approved such title, there was no mutually binding contract, as vendor was not obligated to deliver a commercial abstract of title showing good and merchantable title to land.

**8. Vendor and purchaser 146—Vendee must prepare deed.**

Under contract for sale of land, providing for cash payment on approval of title and delivery of deed, vendor was under no contractual obligation to do anything further to show a good and merchantable title, and, for vendee to bind vendor, he must not only have shown his readiness, ability, and willingness to comply with contract, but must have drawn and tendered to vendor a deed ready for execution, in accordance with provisions of contract.

Appeal from Circuit Court, Bibb County; S. F. Hobbs, Judge.

Action for damages for breach of a contract to convey realty by T. L. Baker, as trustee in bankruptcy of W. A. Sibley, against Allen P. Howison. Following adverse rulings on pleading, plaintiff takes a nonsuit, and appeals. Affirmed.

Eyster & Eyster, of Albany, and Jerome T. Fuller, of Centerville, for appellant.

The duty was upon the defendant to furnish a good title to the property. Chapman v. Lee's Adm'r, 55 Ala. 623; Carroll v. Mundy & Scott, 185 Iowa, 527, 170 N. W. 790, 4 A. L. R. 814; McDennis v. Finch, 197 Ala. 78, 72 So. 352; 27 R. C. L. 368, 487; Hunter v. O'Neil, 12 Ala. 37; Cullum v. Branch Bank, 4 Ala. 21, 37 Am. Dec. 725; Consumers' Co. v. Yarbrough, 194 Ala. 488, 69 So. 897; 9 Cyc. 488; Tobin v. Bell, 61 Ala. 128; Flinn v. Barber, 64 Ala. 199; Messer-Johnson R. Co. v. Security S. & L. Co., 208 Ala. 541, 94 So. 734; 39 Cyc. 1441; Danzer v. Moerschel (Mo. Sup.) 214 S. W. 849, 7 A. L. R. 1166. Failure to furnish abstract gave plaintiff a right of action. 27 R. C. L. 512. The measure of damages is the difference between the contract price and value of the land. Hampton Stave Co. v. Gardner, 154 F. 805, 83 C. C. A. 521. The contract is bilateral. Jones v. Lanier, 198 Ala. 372, 73 So. 535. One who prevents performance of a condition may not take advantage of nonperformance. Cape Fear Co. v. Wilcox, 52 N. C. 481, 78 Am. Dec. 260; Davis v. Crookston W. W. Co., 57 Minn. 402, 59 N. W. 482, 47 Am. St. Rep. 622; Rankin v. Darnell, 11 B. Mon. (Ky.) 30, 52 Am. Dec. 557; Hunt v. Test, 8 Ala. 713, 42 Am. Dec. 659; Baxley v. Tallassee & M. R. Co., 128 Ala. 191, 29 So. 451; 9 Cyc. 647, 688, 701, 721.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Lavender & Thompson, of Centerville, for appellee.

The purported contract lacks in mutuality, and is unenforceable. Clark on Contracts, 165; Comer v. Bankhead, 70 Ala. 136; Ragland v. Wood, 71 Ala. 145, 46 Am. Rep. 305; McIntyre L. & E. Co. v. Jackson L. Co., 165 Ala. 268, 51 So. 767, 138 Am. St. Rep. 66; Consolidated Portrait Co. v. Barnett, 165 Ala. 655, 51 So. 936; 5 Words and Phrases, 4648.

THOMAS, J. This is not a bill seeking specific performance, but a suit for damages for the breach of an alleged contract to convey real property.

The nonsuit was taken because of adverse rulings in sustaining demurrers to the several counts of the complaint as last amended

Count 1 as amended sets out the alleged contract. Said count is as follows:

"The plaintiff, T. L. Baker, as trustee in bankruptcy of W. A. Sibley, who was doing business under the name of Sibley Lumber Company, claims of the defendant the sum of $100,000 damages for breach of a covenant or agreement made and entered into on or about the 4th day of November, 1919, as follows, to wit:

" 'State of Alabama, County of Bibb.

" 'Know all men by these presents that for and in consideration of the sum of twenty-five dollars ($25.00) to me in hand paid by the Sibley Lumber Company of Albany, Alabama, to apply on the purchase price of the timber on my lands known as the Maplesville, Randolph, and Vick tracts of land in the counties of Chilton and Bibb, state of Alabama, and containing approximately fifty one hundred (5,100) acres, and being the same lands as indicated on map furnished by me to the said Sibley Lumber Company.

" 'The consideration of this same to be three hundred thousand dollars ($300,000.00). A cash payment of two hundred thousand dollars ($200,000.00) to be paid on approval of title and delivery of deeds, the balance of one hundred thousand dollars ($100,000.00) to be paid in two equal payments, one and two years from date, with interest at the rate of eight per cent. from date. The same to be secured by first mortgage on the timber.

" 'The timber effective by this sale covers all timber on said land, eight inches in diameter and up at the stump, and to be cut twelve inches above the ground.

" 'I hereby allow the said Sibley Lumber Company six years in which to remove the timber from said lands.

" 'The above-named price for this timber, three hundred thousand dollars, to be net to the said Allen P. Howison.

" 'All minor details shall be enumerated at time of the making of deeds to the above lands, and settled by that time.

" 'Allen P. Howison.        [L. S.]
" 'The Sibley Lumber Co.,
" 'By W. A. Sibley.   [L. S.]

" 'Witness:
" 'T. L. Baker.
" 'Grover L. Cleveland.
" 'Nov. 4, 1919.'

"It was the duty of the said defendant under and by virtue of the above set out contract to furnish the said Sibley an abstract of title to the lands, the timber on which was sold by the defendant to Sibley, under said contract, showing that the said defendant owned and was possessed of a merchantable title in and to the lands shown by said map mentioned in the contract, and the furnishing of such by defendant to Sibley was necessary before said Sibley could approve said title to the said lands and the timber thereon, and avers that, although Sibley stood ready, willing, and able to approve the title to said lands, upon the defendant furnishing to him an abstract of title, showing defendant possessed of a good merchantable title, that the failure of said defendant to furnish an abstract to him showing defendant possessed of a merchantable title to the timber, deprived and prevented said Sibley from approving said title, thus plaintiff avers that Sibley was thereby prevented and deterred from approving the title to the lands made mention of in the contract by the defendant, and plaintiff avers that had the defendant been seized and possessed of a good and merchantable title to said lands, and had Sibley not been, as herein alleged, prevented from approving the title to said lands, that Sibley stood ready, willing, and able to comply with all the terms and conditions of the above contract, and did comply therewith so far as he could, except as prevented by the said defendant.

"Plaintiff further avers that Sibley made demand upon defendant to furnish him an abstract of title showing that defendant was seized and possessed of a good and merchantable title in and to the lands, and plaintiff avers that defendant failed and refused, upon the demand of said Sibley, to furnish an abstract of title showing defendant seized and possessed of a good and merchantable title to the lands, and therefore to make to said Sibley a good and merchantable title in and to the said lands, wherefore plaintiff avers that the defendant breached his contract to plaintiff's damage, and that plaintiff was damaged as a proximate consequence thereof in this; said timber on the lands which said plaintiff brought [bought] from said defendant on November, 4, 1919, at $300,000 was reasonably worth the sum of $400,000. Plaintiff avers that he was duly appointed trustee of the estate of W. A. Sibley, by order of the federal court on, to wit, the 28th day of February, 1921."

Count 11 contained the further averment that it was defendant's duty under the instrument exhibited "to furnish to Sibley a good title to the lands described," and, defendant wrongfully failing in this, "prevented the said Sibley from approving the title to said land," averring that Sibley "stood ready, willing, and able to approve a good and merchantable title to the said lands of the defendant, and to pay to the said defendant the consideration expressed in the contract, and to comply with all terms and provisions of said contract," etc.

Count 13 exhibits the writing of the parties, and avers that it was the duty of Howison to furnish Sibley "an abstract of title to the timber which was sold," "showing that the defendant owned and possessed a good merchantable title in and to the said tim-

ber shown by said map mentioned in said contract"; that this "was necessary" before the said Sibley "could approve said title to said timber"; that Sibley was "ready, willing, and able to approve the title to said timber upon defendant furnishing to him an abstract of title," as he was required to do, etc., "showing•that defendant possessed of a good merchantable title"; that on request and demand defendant failed to furnish said abstract "as he was required to do under said contract, showing defendant possessed of a merchantable title to said timber," and thereby deprived and prevented Sibley from "approving the title." The concluding paragraph of that count contains the further averments:

"Plaintiff further avers that said Sibley (Sibley Lumber Company) made demand upon defendant to furnish him an abstract of title showing that the defendant was seized and possessed of a good merchantable title in and to said timber, and plaintiff avers that said defendant failed or refused upon said demand of said Sibley (Sibley Lumber Company) to furnish an abstract of title showing defendant seized and possessed of a good and merchantable title to said timber, and therefore to make to said Sibley (Sibley Lumber Company) a good merchantable title in and to the said timber, wherefore plaintiff avers that the defendant breached his contract to plaintiff's damage, and that plaintiff was damaged as the proximate consequence thereof in this. * * *"

Among the many grounds of demurrer are contained those to the effect that the averment that defendant failed to present and execute to Sibley or his lumber company "a good and merchantable title" is a conclusion of the pleader; that the averment that plaintiff has complied with the provisions of the contract is a conclusion of the pleader in the failure to aver in what manner the plaintiff has complied; that the complaint fails to aver wherein defendant failed to execute a good and merchantable title to the timber, or that his title was not good and merchantable, or that plaintiff complied with his part of the contract within a reasonable time; and that said contract "was void and incapable of specific performance, in that the same was not binding on each of the parties thereto"—that it sought to bind "the defendant, but same did not require W. A. Sibley or Sibley Lumber Company to comply with the terms thereof." The foregoing will illustrate the rulings of the circuit court in sustaining demurrers to the complaint.

Much argument of appellant is based on the stipulations of the general provisions of the contract of sale which, it is insisted, required the alleged vendor to furnish the purchaser an abstract of title showing a good and merchantable title to the lands in question; and the early cases of Wade v. Killough, 5 Stew. & P. 450, and Chapman v. Lee's Adm'r, 55 Ala. 616, are cited.

[1] The rule in England is that the vendor is required to furnish at his own expense an abstract of every material document of title after the date fixed for the commencement of that title; even though a contract of sale does not expressly require the vendor to furnish an abstract, it is incumbent upon him when so required by the vendee. 39 Cyc. 1516; In re Stamford, etc., Co. [1900] 1 Ch. 287; Poppleton v. Buchanan, 4 C. B. N. S. 20; 4 Jur. N. S. 414; 27 L. J. C. P. 210; Re Pelly, 80 L. T. N. S. 45; Re Ford, L. R. 10 Ch. Div. 365; Re Johnson, 54 L. J. Ch. (N. S.) 889. In this country the general rule is that, in the absence of a specific agreement therefor, the vendor is not required to furnish an abstract showing the condition of his title. Tapp v. Nock, 89 Ky. 414, 12 S. W. 713; Espy v. Anderson, 14 Pa. 308; Smith v. First Nat. Bk., 43 Tex. Civ. App. 495, 95 S. W. 1111; Thompson v. Robinson, 65 W. Va. 506, 64 S. E. 718, 17 Ann. Cas. 1109; Easton v. Montgomery, 90 Cal. 307, 27 P. 280, 25 Am. St. Rep. 123. An abstract of title may be required by the express terms of the contract, or to the extent of the necessities of the case, for the purpose of a proper conveyance to be tendered by the vendee upon demand of the vendor. Wade v. Killough, 5 Stew. & P. 450, 459, 461, 462; Chapman v. Lee's Adm'r, 55 Ala. 616. In the last-cited case there is approval of the text from 2 Addison on Contracts, § 513, to the effect that an agreement to make out a good title is implied from every contract for the sale of realty, and a purchaser is not bound to accept a doubtful title; and the observation is made therefrom that the purchaser, having the right to require a good title and not being bound to accept a doubtful one, cannot be compelled to accept and pay for land which the seller holds by a doubtful or defective title. Taylor v. Newton, 152 Ala. 459, 44 So. 583; Cudd v. Wood, 205 Ala. 682, 89 So. 52. That case was followed on this point in Messer-Johnson Realty Co. v. Security Sav. & L. Co., 208 Ala. 541, 94 So. 734, declaring that the law requires a vendor's title to be good and merchantable, even though the contract does not so stipulate, and, further, that a title resting on adverse possession may be marketable, accompanied by the means for establishment, if attacked by a third person—"must produce proof of such title" as indicated in that opinion.

The statement contained in the opinion in Chapman v. Lee's Adm'r, supra, was to the effect that the duty being on the purchaser to tender to the vendor the conveyance to be executed by the latter, made it incumbent on the vendor to furnish abstract of title to the buyer. What was meant by this statement cannot be answered without further consideration of the early authorities.

The abstract of title, as dealt with in earlier English authorities, was in consequence of vendor's possession of the title deeds and the absence of record of land titles; "the deeds being passed on to each succeeding

purchaser as evidence of title" (8 Eng. Rul. Cas. 660–671), and was for all practicable purposes merely an index to or memorandum of the deeds so prepared to facilitate their examination. Until comparatively recent times in England there was no record of land titles, and there existed no general or public right of inspection of public records. State v. Grimes, 29 Nev. 50, 84 P. 1061, 5 L. R. A. (N. S.) 545, 550, 124 Am. St. Rep. 883; 10 L. R. A. 212; 27 L. R. A. 82; 1 R. C. L. 89; L. R. A. 1918E, 942; 1 Words and Phrases, p. 47. The novelty of abstracts of title or books (in the commercial sense) as articles of ownership gave rise to the doubt as to their legal character as property, and they were held, in Dart v. Woodhouse (1879) 40 Mich. 526, to be "unpublished manuscripts of the author"; the weight of subsequent authority being that they are personal property subject to taxation and seizure under execution against their owner. Washington Bank v. Fidelity Abstract Co. (1896) 15 Wash. 487, 46 P. 1036, 37 L. R. A. 115, 55 Am. St. Rep. 902; Leon Loan Co. v. Equalization Board (1892) 86 Iowa, 127, 53 N. W. 94, 17 L. R. A. 199, 41 Am. St. Rep. 486; Booth Abstract Co. v. Phelps (1894) 8 Wash. 549, 36 P. 489, 23 L. R. A. 864, 40 Am. St. Rep. 921. See, also, Shelby County v. Memphis Abstract Co., 140 Tenn. 74, 203 S. W. 512, L. R. A. 1918E, 939.

In this state the commercial bases and modern understanding of abstracts of title were not established in 1886. Randolph v. State ex rel. Collier, Pinckard & Gruber, 82 Ala. 527, 2 So. 714, 60 Am. Rep. 761; Phelan v. State, ex rel. Rosenstok (1884) 76 Ala. 49; Brewer v. Watson (1882) 71 Ala. 299, 46 Am. Rep. 318. In the light of the general authorities in England and in this country, and the foregoing authorities from this jurisdiction, when the cases of Wade v. Killough (1834) 5 Stew. & P. 450, and Chapman v. Lee's Adm'r (1876) 55 Ala. 616, are understood, the words "an abstract of his title" were not more than what was required of the vendor under the common law. It was merely a memorandum or index to the deeds to vendor's lands prepared to facilitate their examination and to enable the purchaser to draw and present to the vendor "such titles as he was satisfied with." Wade v. Killough, supra. This is evidenced by the observation of Mr. Chief Justice Lipscomb, quoting the English rule, in the last-cited case:

"Now, it is admitted, on all hands, that the expense of the conveyance must be borne by the purchaser, *if there be no express stipulation to the contrary.* Therefore, when there is no such stipulation, the purchaser is bound to tender the conveyance." (Italics supplied.)

That the same kind of an abstract of 'title was referred to in Chapman v. Lee's Adm'r, 55 Ala. 616, 623, is evidenced by Mr. Justice Manning saying:

"Ever since the decision in Wade v. Killough (5 Stew. & P. 450), it has been held to be the duty of the purchaser of land, in this state, to prepare and tender to the vendor the conveyance to be executed by the latter. But it is incumbent on him to furnish, when required, an abstract of his title to the buyer."

No such abstract of title as was the subject of decision in Re Stamford, etc., Co. [1900] 1 Ch. 289, L. J. 1900, p. 129, under the Act of (1881) 44 and 45, Civ. C. 41, was adverted to in our decisions.

[2, 3] We hold that these references mentioned by appellant's counsel were not to abstracts of title such as are commonly known as commerical abstracts, often the subject of contract stipulations between the vendor and vendee of real property; that is to say, in this jurisdiction the question as to which party is to prepare the abstract of title should be made certain by the contract of sale. If the parties do not agree that the condition of the title shall be ascertained from any particular character of abstract of title, or from an abstract to be furnished by the vendor (other than a mere index of his deed and descriptions therein or such other information as the vendor possessed to be given on request in order that conveyance may be prepared), it is incumbent on the purchaser to provide the abstract and to satisfy himself of the condition of the title. Easton v. Montgomery, 90 Cal. 307, 27 P. 280, 25 Am. St. Rep. 123; Carr v. Roach, 9 N. Y. Super. Ct. (2 Duer) 20; Espy v. Anderson, 14 Pa. 308, 25 Am. St. Rep. 123, 127; State v. Grimes, 29 Nev. 50, 84 P. 1061, 5 L. R. A. (N. S.) 545, 124 Am. St. Rep. 883; 1 R. C. L. 89; 1 C. J. 365 et seq. It follows that a commercial abstract of title may only be required at the vendor's expense by the express terms of the contract. 39 Cyc. p. 1516, and foregoing authorities. See Roberts v. Wyatt (1810), 2 Taunt. 268, 11 R. R. 6.

The subjects, contracts to convey, mere options and propositions or offers to sell real property were considered in Lauderdale Power Co. v. Perry, 202 Ala. 394, 395, 80 So. 476. And in Bethea v. McCullough, 195 Ala. 480, 70 So. 680, the distinction between mere options and agreements to convey is adverted to—the one "contemplating the passing of title in futuro," and the other to make such title as the instrument "purports to pass" and which "vests in præsenti an estate in fee, subject to be defeated upon condition." A phase of contracts or the mutuality of consideration required is contained in Moore v. Williamson, post, p. 274, 104 So. 645.

Under the respective insistences of counsel, a pertinent inquiry is the nature and legal effect of the writing before us, and whose was the duty thereunder of "approval of title" as a condition precedent (Lowery v. May [Ala. Sup.] 104 So. 5[1]) to the making of the cash payment of $200,000, the "delivery of deeds," and thereafter the securing

---

[1] Post, p. 63.

of the payment of the balance of purchase price of $100,000 required to be made "in two equal payments, one and two years from date," with legal interest "from date," secured by first mortgage.

It should be noticed that said instrument contained the provision that "all minor details shall be enumerated at time of the making of deeds to the above lands, and settled *by* that time" (count 1), or "settled *at* that time" (count 13), and that the recited cash consideration was only 25, paid by Sibley Lumber Company. (Italics supplied.)

Was the instrument an option that had been accepted by Sibley (Lauderdale Power Co. v. Perry, 202 Ala. 394, 80 So. 476), or was it an option merely that lacked in mutuality?

[4] It is a fundamental law of contracts that both parties thereto must be bound by the terms of the contract, or neither is bound. Moore v. Williamson (Ala. Sup.) 104 So. 645; [2] Christie v. Durden, 205 Ala. 571, 88 So. 667; Pullman Co. v. Meyer, 195 Ala. 397, 70 So. 763; Jones v. Lanier, 198 Ala. 363, 73 So. 535; McIntyre Lumber & Export Co. v. Jackson Lumber Co., 165 Ala. 268, 51 So. 767, 138 Am. St. Rep. 66; Consolidated P. & F. Co. v. Barnett, 165 Ala. 655, 51 So. 936; Ragland v. Wood, 71 Ala. 145, 46 Am. Rep. 305; Comer v. Bankhead, 70 Ala. 136; Clark on Contracts, 165; 14 A. L. R. p. 1303, note.

In McIntyre Lumber & Export Co. v. Jackson Lumber Co., 165 Ala. 268, 274, 51 So. 767, 770 (138 Am. St. Rep. 66), is contained the pertinent observation of the law of unilateral contracts:

"The law does not favor, but leans against, the destruction of contracts because of uncertainty; it will, if feasible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. Boykin v. Bank, 72 Ala. 262, 47 Am. Rep. 408. If by the terms of an agreement an option is reserved to one party, to determine it, or to consummate it to a contract, the law will give the like option to the other, until both are bound; then it becomes a binding contract. Eskridge v. Glover, 5 Stew. & P. 264, 26 Am. Dec. 344."

And in Majestic Coal Co. v. Anderson, 203 Ala. 233, 82 So. 483, it is declared:

"Though an executory contract is voidable and may be canceled because of absence of mutuality at the time of its execution, if the party in whose favor the unilateral promise is made accepts its performance, this supplies the element of mutuality, and gives a right of action."

[5] It follows from the authorities that, when one is bound by an alleged contract to do something when the other party does some other stated act, but which contract contains no promise or obligation on the other party to do anything or pay any money or forego any obligation, it is "unilateral," is without

mutuality, and is revocable at any time before the party to whom it is addressed does or performs any act on the faith of said contract. Consolidated P. & F. Co. v. Barnett, 165 Ala. 655, 51 So. 936, a letter of credit; Hughes v. Bickley, 205 Ala. 619, 89 So. 33, option to sell real property; Majestic Coal Co. v. Anderson, 203 Ala. 233, 82 So. 483, lease to mine coal; Scott v. Moragues Lumber Co., 202 Ala. 312, 80 So. 394, option to purchase a certain American vessel, and the demurrer challenged the complaint for the lack of averment that Scott offered to buy within a reasonable time—the offer, being held open, dispensed with the necessity of the averment that the offer was made within a reasonable time.

For the purpose of illustration of the application of the foregoing authorities and what one side regarded as an abstract of title we note that appellant says in his brief:

"From the day he [Sibley] bought the timber he began to request of defendant the immediate delivery to, him of an abstract of title to the lands. After much insistence * * * a document purporting to be an abstract was delivered to him by defendant. The abstract was promptly placed in the hands of reputable attorneys by Sibley, for examination. Within a reasonable time the attorneys rendered their opinions. * * * They could not approve it. * * * Sibley called on Howison to remedy his title and cure the defects. Howison didn't show very much speed, so Sibley sent two lawyers, * * * and they worked several days trying to get deeds and affidavits * * * to get the titles * * * in such shape that they could approve. Howison said that he was satisfied with the title, and at one time agreed to put up a $100,000 security bond to guarantee the title, but later backed down; he wouldn't do anything more in getting the titles in shape, although requested."

[6] In the absence of stipulation to the contrary, every contract for the sale of real estate implies that a good title will be made. Consumers' Coal & Fuel Co. v. Yarbrough, 194 Ala. 482, 69 So. 897; Messer-Johnson Realty Co. v. Security Sav. & L. Co., supra; Cullum v. Bank, 4 Ala. 21, 37 Am. Dec. 725.

The subject of a good and merchantable title was given consideration in Messer-Johnson Realty Co. v. Security Sav. & L. Co., 208 Ala. 541, 94 So. 734. The contract construed stipulated that the title should be "good and merchantable"; that the seller should "furnish abstract" within the time stipulated; and that the purchaser should pass on the title within 10 days after the abstract was furnished. Boylan v. Wilson, 202 Ala. 26, 79 So. 364. In the instant case there are no specifications as to the nature of the title, or for the furnishing of a commercial abstract of title, expressly contained in the writing made the basis of the suit.

[7] In McDennis v. Finch, 197 Ala. 76, 72 So. 352, the contract required a title satisfactory to the purchaser's attorney; held,

---

[2] Post, p 274.

that his dissatisfaction with or rejection of the title because it rested upon asserted adverse possession "alone was within the legal import of the contract for satisfaction." In that case the agreement to furnish an abstract of title under covenant and contract of sale of land by which the vendor agreed that said abstract would show title in him to the land to which the contract related is construed to require an abstract showing title of the character contracted for as a condition precedent to the liability of the vendee to perform, unless the furnishing of such an abstract is waived by the party having the right thereto. Messer-Johnson Realty Co. v. Security Sav. & L. Co., 208 Ala. 541, 94 So. 734; 7 A. L. R. 1166. So long as the title to Howison's lands was not approved by Sibley, no money could have been required by the former to be paid by Sibley's lumber company. The approval of the title was the condition precedent to the payment of· the $200,000 and the delivery of Howison's deed. The amended pleadings to which, demurrers were sustained did not show the "approval of title" stipulated. Until Sibley approved said title there was no mutually binding contract, for Howison had not contracted, by the instrument before us, to deliver a commercial abstract of title showing a good and merchantable title to the lands, or to do anything to better evidence or perfect his title .thereto. Such title as he had was embraced in the offer of sale and abstract furnished, and until there was approval or unconditional acceptance no mutual right of action existed.

[8] In the illustration found in appellant's argument, and the careful pleading sought to evidence or guard the plaintiff's view of the legal effect of the writing, it may be said that Howison was under no contractual obligation to perfect or to better evidence his title, or to do anything further to convince Sibley or his lumber company that the title was good and merchantable. It may be further said, if the latter had secured from his attorneys "approval of the title" as the condition precedent to "delivery of deeds" on payment and security provided, he could bind Howison at law only by showing his readiness, ability, and willingness to comply, but he must have drawn and tendered to Howison a deed ready for his execution in accordance with the provisions of the instrument exhibited by plaintiff's pleadings (Wade v. Killough, 5 Stew. & P. 450; Chapman v. Lee's Adm'r, 55 Ala. 635; Garnett v. Yoe, 17 Ala. 74; Johnson v. Collins, 17 Ala. 318; Gentry v. Rogers, 40 Ala. 442; Harper v. Johnson, 129 Ala. 296, 30 So. 283), unless the acts of Howison vitiated the contract before the time had arrived for performance (Brady v. Green, 159 Ala. 482, 48 So. 807, where the vendor refused to convey the land). See Mitchell v. Wright, 155 Ala. 458, 46 So.

473; Smith v. Sherman, 174 Ala. 531, 56 So. 956; McKleroy v. Tulane, 34 Ala. 78.

In Blackburn v. McLaughlin, 202 Ala. 434, 436, 80 So. 818, the bill was for specific performance growing out of the contract and not out of a breach of it by the defendant; and as to unilateral contracts it was there said "that, although there may be a lack of mutuality in the beginning, this may be cured by .the unbound party subsequently binding himself also by promise or act." Sheffield Furnace Co. v. Hull Coke & Coal Co., 101 Ala. 446, 14 So. 672; Zirkle v. Ball, 171 Ala. 568, 54 So. 1000. Mr. Justice Sayre further said in the Blackburn Case, supra:

"Now that complainant has filed his bill, there can be no question about mutuality of obligation between the parties."

Plaintiff had not bound himself by promise or act to comply with the terms of purchase before the suit was brought, and the nature of this action has not that effect.

After all that may be said, until the mere option had been acted upon by Sibley as required by law to bind Howison, it was nothing more than an unaccepted proposition or mere option to sell on so much of the terms as were stated and in which there were other matters described as "minor details" to "be enumerated at time of the making of deeds" by Howison and to be "settled" by the parties by or at (as the case was) "that time"—the time of consummation.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

