THE ALTON BEACH REALTY COMPANY, A FLORIDA CORPORATION, *Appellant,* v. F. C. HENDERSON, *Appellee.*

En Banc.

Opinion Filed August 31, 1926.

1. Telegrams or letters passing between the parties may constitute adequate memorandum of the contract under the statute of frauds, and several telegrams, letters or other writings, signed by the party to be charged, may be considered together in supplying the essential elements of such memorandum as will satisfy the statute.

2. A written memorandum for the sale of land required by the statute of frauds can not rest partly in parol, but the written memorandum must disclose all of the terms of the sale. It must designate with certainty the lands to be conveyed, the purchase price and the time payment.

3. A court of equity will not enforce an executory agreement for the sale of land which fails to fix the purchase price and the time of payment.

An Appeal from the Circuit Court for Dade County; Will H. Price, Judge.

Order reversed.

*Shutts & Bowen* and *John S. Benz,* for Appellant;

*Charles H. Hyde* and *Julian C. Ryer,* for Appellee.

LONG, Circuit Judge.—This is an appeal from an order of the Circuit Court of Dade County, overruling the general and special demurrer of appellant, defendant in the court below, to a bill of complaint praying for the specific performance of a contract for the sale of certain real estate, which contract consists of certain memorandums, letters and messages passing between the parties complainant and defendant.

On the 4th of January, 1926, the defendant filed a general and special demurrer, each of which present to the court for determination the question of whether the bill sets forth any valid or enforceable contract between the parties for the conveyance of real estate.

"It is well settled that the memorandum may consist wholly in letters which, taken together, constitute a contract." Everman v. Herndon (Miss.) 652; Conroy v. Woodcock, 53 Fla. 582, 43 South. Rep. 693; Meek v. Briggs, 80 Fla. 487, 86 South. Rep. 271.

The eleventh paragraph of the bill of complaint sets up various letters and telegrams passing between the parties complainant and defendant, which correspondence is as follows:

"THE ALTON BEACH REALTY COMPANY,

Miami, Florida,

Carl G. Fisher, President,
W. A. Kohlhepp, Vice President,
C. W. Chase, Jr., Secretary.

March 14, 1925.

Dear Mrs. Faulkner:—

This will confirm the statement of our C. F. Aitken to the effect that we will provide paved streets, cement sidewalks and bring water and electricity to lots 1 and 2, Block 18, La Gorce Subdivision, at our expense.

"Similar lots in this subdivision are selling very rapidly and we do not expect to have any such lots left at the end of this season.　　Respectfully yours,

C. W. CHASE, JR.,
Sales Manager
The Carl G. Fisher Properties.
(S)　C. W. Chase, Jr.　EM.

CWE:EM"

"THE ALTON BEACH REALTY COMPANY,

Miami Beach, Florida.

Carl G. Fisher, President,
W. A. Kohlhepp, Vice President,
C. W. Chase, Jr., Secretary.

March 14, 1925.

Mr. F. C. Henderson, Holly Inn, Pinehurst, N. C.:
Dear Mr. Henderson—

Enclosed herewith you will find the two letters covering the street, sidewalk, water and light situation on the lots recently purchased by Mrs. Henderson and Mrs. Faulkner.

I am advised by Mr. Chase that it will be impossible to deliver the contracts covering the golf course lots bought by Mrs. Faulkner until we are in receipt of the balance of

the initial payment. This is a measure to prevent speculation by brokers in unauthorized transactions and must unfortunately apply to all sales in order to be equitable.

At your convenience you can mail a check or draft and I will immediately forward the papers for the signatures.

Only four bay front lots remain to be sold at prices ranging from $25,000.00 to $34,000.00. Looks good for a nice profit if you want to take it early next year.

With kindest regards to Mrs. Faulkner, Mrs. Henderson and yourself, I am          Very truly yours,

                                        (S)   G. F. AITKEN,
GFA/W                                   Sales Division,
                    CARL G. FISHER PROPERTIES.
                        All Golf Course Lots Sold.''

          "THE ALTO BEACH REALTY COMPANY,
                            Miami Beach, Florida.
                                    April 1st, 1925.
Carl G. Fisher, President,
W. A. Kohlhepp, Vice President,
C. W. Chase, Jr., Secretary.
Mr. F. C. Henderson,
      % Henderson Company,
          Nowato, Okla.
Dear Mr. Henderson:

Herewith you will find your $1000.00 draft that you left with Mr. G. F. Aitken, for the purchase of two (2) Miami Beach Lots.

Mr. Aitken was quite sincere in trying to secure these lots for you but because of the long delay before first full payment would have been made us on these lots, it was decided to take them off the market.

                    Respectfully yours,
CWC:EM          C. W. CHASE, Jr., Sales Manager,
                THE CARL G. FISHER PROPERTIES.
                        (S)   C. W. Chase, Jr.   EM

"Mr. C. W. Chase, Jr.,

c/o Carl G. Fisher Properties,          April 4, 1925.

Miami Beach, Florida.

Dear Mr. Chase:

I am in receipt of a copy of your letter of April first to Mr. Frank C. Henderson, c/o Henderson Company, Nowato, Oklahoma.

Mr. Henderson is at present in New York where this letter will be forwarded to him in due time. His New York address pending the return of Mrs. Henderson from Pinehurst, is care of the New York Yacht Club, 37 West 44th Street, New York City.

The refusal to deliver the lots on Mrs. Elizabeth P. Faulkner's order is a very keen disappointment to me, as I had been depending upon this commission to meet some of the heavy obligations recently incurred by reason of my father's death.

I also feel this very keenly on Mr. Henderson's account as he is not only a very good friend of mine, but also a friend and neighbor of Mr. Fisher's. He is very influential both socially and financially, and in a position to make much larger investments should he refrain from having the confidence shattered which I have already inspired.

The investment on the bay front lot which he purchased was for Mrs. Henderson, and the investment on the two lots in Block 19 was for his mother-in-law, with the understanding that she was to dispose of securities and take this up. As she was unable to dispose of the securities immediately, Mr. Henderson agreed to make the payment for her, and in accordance with his custom of doing business, wired us to draw on him for the balance, presuming, of course, the original draft for one thousand dollars had been sent

through.   Accordingly, I wired Mr. Henderson with your approval, as follows:

'Miami Beach, Fla., March 25th, 1925.
F. C. Henderson,
N. Y. Yacht Club,
New York, N. Y.

Draft instructions carried out papers to follow to Pinehurst.

Regards,

C. F. Aitken.

Prepaid.

Charge G. F. Aitken—c/o Carl G. Fisher.'

You probably will recall that I showed this telegram to you before sending it.

I appreciate that these lots have advanced materially in value, and it was with this idea in mind that he gave me his binder.

In doing business in New York for the past twenty-five years I have perhaps been accustomed to doing business with customers whose word is always accepted and very rarely violated.   Accordingly, it is probably hard for me to understand why a financially responsible and influential business man would be turned down after once giving his bond.

I do not want you to misunderstand me, Mr. Chase, as this is not intended as a criticism of the methods of the Carl G. Fisher Properties but simply an expression of my keen disappointment and inability to understand the wide variation in business methods employed between Miami Beach and New York.

I sincerely hope another review may be made of this sale,

and might also add that this letter has reference to this sale alone, and not to either past or future friendly relations.

Very truly yours,

GFA :Ec                                              G. F. Aitken.

## WESTERN UNION TELEGRAM

Carl G. Fisher,
Miami, Beach, Florida.

Some three weeks ago I purchased two golf course lots for my mother-in-law and gave my draft for one thousand dollars in Oklahoma made out to your order which was delivered to Mr. Chase and accepted by him. It was the understanding through your Agent G. F. Aitken that Mrs. Faulkner was to sell certain securities and pay the balance due on these lots. Owing to the slump in stock market I wired authorizing Mr. Aitken to have your Mr. Chase draw on me in Nowata for the balance. This telegram was submitted to Mr. Chase and approved by him. He did not forward the one thousand dollar draft nor did he draw on me for the balance of the payment but on April first wrote me a letter returning the one thousand draft and declining to deliver the property. I think you will realize as a business man that this is a very poor excuse for laying down on the transaction and I feel sure that you are not the kind of a man to countenance this kind of business. I am prepared to take up this payment in full and authorize drafts to complete the transaction as you will see. You told me in your office when I was there with Mr. Parslow that you had reserved certain lots for Mr. Black and I did not ask for any reservation. I purchased those two lots through your authorized agent as well as one for Mrs. Henderson. I would appreciate a personal telegram from you in care

of the New York Yacht Club advising me if your company definitely declines to deliver these lots. Kind regards.

F. C. HENDERSON.''

''THE ALTON BEACH REALTY COMPANY

Miami Beach, Florida, April 10th, 1925.

Carl G. Fisher, President,
W. A. Kohlhepp, Vice-president,
C. W. Chase, Jr., Secretary.

Mr. F. C. Henderson c/o New York Yacht Club,
New York, N. Y.

Dear Mr. Henderson:

Upon receipt of your telegram by Mr. Fisher, he asked for a full report on the circumstances surrounding our returning your check. Mr. Fisher has asked the writer to fully explain the matter to you in this matter.

At the time Mr. Aitken presented your $1000 check to the writer, it had already been about three weeks since he first spoke for the lots you desired. At the time Mr. Aitken placed this $1000 check, I told him that we did not accept binders on the sale of any lots and I was afraid that in not securing your full down payment on these lots that there would be a probability that you would not be able to get them if the price advanced.

Our rule here for the past two years has been that we do not accept any binders on our property, nor do we accept any orders to make drafts unless such drafts are actually signed by the party intending to purchase. Between the time that your $1000 check had been presented and the time that the writer received instructions to make draft upon

you for the full balance, the property you were interested in had considerably advanced. The fact that we had refused to deposit your $1000 check shows that we did not consider we had made an actual sale of the lots to you, and had we so felt that this was an actual sale, your $1000 check would have been cashed at the time it was presented.

We do not feel therefore that you have any right to ask us to deliver the lots to you at their former price, when we refused to deposit your binder check upon these lots, when they were selling at that price, and as our rule here for the past two years has been that we do not sell any piece of property until the full first payment has been made thereon, we cannot feel that you are entitled to the lots at the price you desire them.

Had the writer deviated from the rules and told Mr. Aitken that we would hold these lots indefinitely or for any stated length of time, it might have been different, but I specifically told him at the time he brought in your $1000 check that this could not be accepted as a binder and doubted if the property could be delivered at the former price.

Mr. Aitken was very sincere in looking out for your interest and tried very hard to secure the lots for you, but where we have a strict ruling that no lots can be sold until the full first-payment is made, we cannot see the justice in permitting anyone to buy lots at their previous price when they put down their full first payment with us, considerably after the lots have materially risen in value.

Respectfully yours,

C. W. CHASE, Jr.,<br>Sales Manager.

THE CARL G. FISHER PROPERTIES.

(S) C. W. CHASE, Jr., EM.

CWC:EM''

The essential or substantive feature of the agreement which must appear on the face of the memoranda in order that it comply with the requirements of the statute, are: First, the parties; second, the subject matter; third, the promises upon both sides, and fourth, the price or consideration.

From a careful examination of paragraph II of the Bill of Complaint, wherein the writing is relied on as constituting a sufficient memoranda, which, taken together, would constitute a contract, there is no reference to the amount of the initial cash payment of what proportion it bears to the total purchase price, nor is the total purchase price or the terms of the alleged sale set forth in any writing signed by the party to be charged. There is some discussion as to the initial cash payment and receipt of a draft by appellant in the sum of $1,000.00.

In the case of Conroy v. Woodcock, 53 Fla. 582, 43 South. Rep. 693, this court has said: 'The consideration for sale of land in a note or memorandum satisfies the statute where the total is given, one-fourth whereof is to be paid as provided therein and the balance to be paid in one, two or three years.'' The presumption is that equality of payment is intended, but in the case here the memorandum fails to disclose the total consideration, the initial cash payment or the terms.

''An executory agreement for the sale of land which fails to describe or otherwise identify the land and name the purchase price and the time of payment is not enforceable in a court of equity.'' Edwards v. Rives, 35 Fla. 89, 17 South. Rep. 416.

As the court below was clearly in error in holding, by overruling the general and special demurrer, that the bill of complaint did set forth a valid and enforceable contract between the parties hereto for the conveyance of real

estate, it is unnecessary to discuss the other grounds of the demurrer. For the reason stated, the order of the court overruling the general and special demurrer is reversed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the order of the court below overruling the general and special demurrer in this cause should be, and the same is hereby, reversed.

BROWN, C. J., WHITFIELD, STRUM AND BUFORD, J. J., concur.