57 So.2d 836 (1952)
MEHLER
v.
HUSTON.
Supreme Court of Florida, Division A.
March 25, 1952.
Herbert H. Hutner, Miami, for appellant.
Hunt, Salley & Roman, Miami, for appellee.
HOBSON, Justice.
This is a suit which was instituted by the appellant against the appellee wherein specific performance of an alleged written contract for the purchase and sale of certain real property located in Dade County was sought. Appellant, as plaintiff below, based his cause of action upon certain correspondence which passed between appellee and Bernard Hutner who is a registered real estate broker.
Appellee wrote a letter to Mr. Hutner in which he described the subject property and in which he stated: "I have decided to offer the property for $1,000 inclusing [sic] your brokerage fee which I understand is 10%. This offer is being made to you and other clients as of this day." Subsequent to the receipt of this letter Hutner wrote appellee and stated: "The terms of $1000 including brokerage fee of 10% which you offered in said letter is hereby accepted by my client." Mr. Hutner informed appellee in this letter that $250 had been deposited with the Dade Commonwealth Title Insurance Company and enclosed a receipt from said company. He further enclosed three *837 copies of a "Deposit Receipt" which he requested appellee and his wife, if any, to execute. He advised appellee to return one copy to the Dade Commonwealth Title Insurance Company and another to him. The question which was presented to the lower court and which is now before us is whether the correspondence coupled with the "Deposit Receipt" which had been signed by appellant constituted an enforceable contract or agreement for the sale and purchase of real property. Above the signature of Edward Mehler, appellant, which was witnessed by two witnesses, there appears the following language: "I, or we, agree to purchase the above described property on the terms and conditions stated in the foregoing contract and do hereby approve, ratify and confirm said contract in all respects." (Italics supplied.) The learned Chancellor granted a motion to dismiss the amended complaint without leave to amend.
We have often held that an enforceable contract for the purchase and sale of real property might consist of several instruments in writing, such as letters, telegrams, etc. Burke v. Wallace, 98 Fla. 604, 124 So. 30; Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498; Alton Beach Realty Co. v. Henderson, 92 Fla. 689, 110 So. 256; Meek v. Briggs, 80 Fla. 487, 86 So. 271. The test to be applied to determine whether such written instruments in fact constitute a contract which might be a predicate for specific performance is whether there has actually been a meeting of the minds of the parties upon definite terms and conditions which include the essential elements of a valid contract. The instruments in writing which allegedly constitute a valid contract must specify the terms and conditions definitely and certainly. If, as in this case, the correspondence consists of an offer to sell and an alleged acceptance of said offer the acceptance must be identical with the offer and unconditional. If the acceptance is conditional or the one so accepting proposes in his acceptance some new term or terms the acceptance amounts to a counter proposal and demonstrates only a willingness to negotiate. Lohmeyer v. Williams, 160 Fla. 940, 37 So.2d 419; Bullock v. Harwick, 158 Fla. 834, 30 So.2d 539; Prescott v. Mutual Ben. Health & Accident Ass'n, 133 Fla. 510, 183 So. 311, 119 A.L.R. 525; Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498; Strong & Trowbridge Co. v. H. Baars & Co., 60 Fla. 253, 54 So. 92.
Appellant did not directly communicate with appellee but he did sign the "Deposit Receipt" which was forwarded to appellee by the broker. For this reason, it is unnecessary for us to discuss the matter of Bernard Hutner's authority to act as agent for and to bind appellant. Consequently, we will go directly to the correspondence and determine whether it constitutes a valid and enforceable contract or, more particularly, an offer and acceptance for the purchase and sale of real property.
We agree with the Chancellor in his conclusion that the correspondence was insufficient to create a contract the specific performance of which should be ordered by a court of equity. The most that can be said is that there was an attempted acceptance of the offer to sell but such acceptance was not unconditional. Indeed, the so-called acceptance was a counter proposal. It is true that it was an acceptance of the price of $1,000 set forth in the offer which included a 10% commission to the broker but, as is shown by the "Deposit Receipt", new terms and conditions were proposed by the appellant, at least one of which was a condition which could not have been supplied by presumption of law or by custom and practice in this jurisdiction. The condition to which we refer is as follows: "Seller agrees to deliver to purchaser within 30 days from date hereof an abstract to said property, * * * and in the event such abstract is not delivered within said time, seller hereby authorizes the undersigned broker to have an abstract made at seller's expense and delivered to purchaser * * *." Appellee, had his offer to sell as written in the letter to the broker been unconditionally accepted, would not have been required by law to furnish an abstract of title. Therefore, it cannot be said that this condition contained in the acceptance could, without an express contract, have been an obligation of appellee because of *838 any presumption of law. The general rule which we have determined to follow is that the seller is not required to furnish an abstract of title unless he specifically contracts so to do. Baker v. Howison, 213 Ala. 41, 104 So. 239, 52 A.L.R. 1452; Thompson v. Robinson, 65 W. Va. 506, 64 S.E. 718, 17 Ann.Cas. 1109; 55 Am.Jur. 731, 52 A.L.R. 1462; 66 C.J. 957. In such a situation custom and practice need not be considered. However, we are impelled to observe that the Florida Real Estate Handbook 1948, of which publication appellant requests us to take judicial cognizance, suggests in no uncertain terms what the custom and practice is in this jurisdiction and recognizes the general rule of law which we have adopted herein by use of the following language: "But the seller is only required to provide such a title and is not required to furnish an abstract showing it unless he agrees to do so." As we have previously emphasized, appellant only agreed to purchase the subject property upon the terms and conditions stated in the "Deposit Receipt."
When appellant, through the broker, proposed the new condition appellee had a right to refuse to accede to it. Furthermore, unless and until he did accept the counter proposal, there could be no valid, enforceable contract for the purchase and sale of real property. We note in passing that the over-all purchase price of this property was the comparatively small sum of $1,000 and appellee in his offer apparently agreed to pay a 10% commission. The record does not disclose what an abstract might have cost but it may well have been the cost thereof which caused appellee to refuse to accept the new proposal by executing the agreement designated "Deposit Receipt" which was tendered to him by the broker.
The appellant contends that the Chancellor abused his sound judicial discretion when he dismissed the amended complaint without leave to the appellant to file another amended complaint. Our answer to this contention is that the record not only fails to disclose the fact that appellant requested the right to make further amendment but it affirmatively appears that by an amendment he could add nothing to the amended complaint which would cause it to withstand a motion to dismiss unless he should allege that appellee had executed and accepted the counter proposal. Had such been the case appellant should have apprised the court of that fact either in his original or amended complaint or should have specifically requested an opportunity to amend for the purpose of making such allegation.
We conclude that the Chancellor did not abuse his sound judicial discretion in denying leave to amend and that he likewise did not abuse such discretion in holding that a court of equity should not order specific performance of the so-called contract as it was alleged in both the original and amended complaints.
Affirmed.
SEBRING, C.J., and TERRELL and THOMAS, JJ., concur.