SEVERSON, Justice.
[¶ 1.] Randy Kramer initiated a breach of contract action against Mike D. Murphy and the William F. Murphy Self-Declaration of Trust (Trust). The circuit court dismissed the case, finding that it was precluded from hearing the case under the terms of a forum-selection clause incorporated into the parties’ contract. Kramer appeals. We affirm.
*814 BACKGROUND
[If 2.] Tri-State Ethanol, LLC owned an ethanol plant in Rosholt, South Dakota. Kramer was one of the members and managers of Tri-State Ethanol. Kramer was also a member of White Rock Pipeline, LLC, which owned a pipeline that supplied natural gas to Tri-State Ethanol. The other individuals and entities that held membership interests in White Rock Pipeline included Murphy, Walter Woods, TriState Ethanol, and the Trust.
[¶ 3.] In order to comply with various federal regulations, Tri-State Ethanol determined it was necessary to purchase the membership interests of Kramer, Murphy, Woods, and the Trust. To accomplish this, Tri-State Ethanol entered into a loan agreement (Loan Agreement) with Murphy and the Trust. Tri-State Ethanol’s duty to repay the loan was evidenced by a $2,100,000 secured promissory note (Promissory Note) and a $380,000 secured balloon promissory note (Balloon Note).[1] The two notes were attached to the Loan Agreement.
[¶ 4.] The Loan Agreement contained a forum-selection clause, which stated, “[TriState Ethanol] ... agrees that at the sole election of [Murphy and the Trust], the jurisdiction and venue for any suit hereon shall be the Fourteenth (14th) Judicial District in Rock Island County, Illinois.” The Promissory Note and the Balloon Note also contained similar forum-selection clauses.
[¶ 5.] To compensate the members who held an interest in White Rock Pipeline, an agreement to disburse funds (Disbursement Agreement) was also executed. The parties to the Disbursement Agreement included Murphy, Woods, Kramer, and the Trust.[2] The Disbursement Agreement provided that 79.3% of each monthly payment Tri-State Ethanol made on the Balloon Note was to be disbursed to Murphy, Walter Woods, Kramer, and the Trust until they were each fully compensated for the value of their respective interests.
[¶ 6.] The Disbursement Agreement was attached to the Loan Agreement along with the Balloon Note and the Promissory Note. However, the Disbursement Agreement did not contain a forum-selection clause.
[¶ 7.] Tri-State Ethanol was unable to meet its financial obligations and eventually filed for Chapter II bankruptcy. During the course of the bankruptcy proceedings, Murphy and the Trust reached a settlement agreement regarding payment of the Loan Agreement and the Disbursement Agreement. Murphy and the Trust, through its trustee, represented to the bankruptcy court that they would use the settlement proceeds to pay Kramer the amounts owed under the Disbursement Agreement. The bankruptcy court approved the settlement agreement.
[¶ 8.] After the settlement proceeds from Tri-State Ethanol’s bankruptcy estate were distributed, Murphy and the Trust refused to pay Kramer the full *815 amount listed in the Disbursement Agreement. Kramer then filed a complaint against Murphy and the Trust for breach of the Disbursement Agreement. The complaint was filed in the Second Judicial Circuit of South Dakota.
[¶ 9.] Murphy filed a motion to dismiss on the grounds of improper venue. He claimed that the forum-selection clauses contained in the Loan Agreement, the Balloon Note, and the Promissory Note controlled for any suit brought on the Disbursement Agreement. The circuit court agreed and dismissed the case. It found that while the Disbursement Agreement itself had no forum-selection clause, the other three agreements contained forum-selection clauses providing that the Fourteenth Judicial District in Rock Island County, Illinois was the proper forum. The circuit court reasoned that the agreements must be considered as a whole.
STANDARD OF REVIEW
[¶ 10.] To determine whether the circuit court erred in dismissing this case, we must interpret the terms of the parties’ agreements. “The interpretation of a contract is a question of law, which is reviewed de novo.” Kernelburner, LLC v. MitchHart Mfg., Inc., 2009 S.D. 33, ¶ 7, 765 N.W.2d 740, 742 (quoting Arch v. Mid-Dakota Rural Water Sys., 2008 S.D. 122, ¶ 7, 759 N.W.2d 280, 282).
DECISION
[¶ 11.] Kramer argues that the circuit court erred in granting Murphy’s motion to dismiss. He emphasizes that the Distribution Agreement did not contain specific language incorporating the terms of the Loan Agreement, the Promissory Note, or the Balloon Note. In the absence of any such express language, Kramer argues that the agreements cannot be construed as a single contract.
[¶ 12.] Kramer’s argument is contrary to this Court’s holding in Baker v. Wilburn, 456 N.W.2d 304 (S.D.1990). In Baker, we recognized that “[a]ll writings that are executed together as part of a single transaction are to be interpreted together.” Id. at 306 (citing Restatement (Second) Contracts § 202 (1981)). Thus, “[w]hen two or more instruments are executed at the same time by the same parties, for the same purpose and as part of the same transaction, the court must consider and construe the instruments as one contract.” Id. (quoting GMS, Inc. v. Deadwood Social Club, Inc., 333 N.W.2d 442, 444 (S.D.1983)).
[¶ 13.] Here, in accordance with our holding in Baker, several facts exist which demonstrate that the documents at issue were executed together as a part of a single transaction. The documents were executed on the same day in order to transfer ownership of White Rock Pipeline to Tri-State Ethanol. In addition, the Disbursement Agreement was dependant upon the execution of the Loan Agreement, the Promissory Note, and the Balloon Note. Dakota Gasification Co. v. Natural Gas Pipeline Co. of Am., 964 F.2d 732, 735 (8th Cir.1992) (“[Hanging one contract upon the execution of another contract ... heightens the need for joint interpretation.”). Finally, the documents were attached to each other and labeled sequentially. In light of these facts, the separate documents cannot be viewed in isolation, but “must be construed together as a single contract involving the same transaction.” Baker, 456 N.W.2d at 306. See Talley v. Talley, 1997 S.D. 88, ¶ 23, 566 N.W.2d 846, 851 (construing four contracts together because they were executed simultaneously as part of a transaction to transfer a mother’s interest in a ranch, ranch equipment, and certain tools to her son, and to provide for the mother and her *816 cattle); GMS, 333 N.W.2d at 444 (construing a contract for deed and a bill of sale as one contract because they “were executed simultaneously, by the same parties, as part of the same transaction — the sale and purchase of ... [certain] property”). Cf Ponderosa-Nevada, Inc. v. Venners, 90 S.D. 579, 243 N.W.2d 801 (1976) (construing a contract for deed and an option agreement as two separate contracts because each contract related to a different piece of real property, provided for separate consideration, and required performance on different dates).
[¶ 14.] In Baker, we held that in determining whether separate documents are to be viewed as one contract, “it is not critical whether the documents were executed at exactly the same time or whether the parties to each agreement were identical.” Baker, 456 N.W.2d at 306. We explained,
Where several writings are connected by internal references to each other, even if they were executed on different dates and were not among all of the same parties, they will constitute a single contract as long as they involve the same subject matter and prove to be parts of an entire transaction.
Id. (quotation omitted).
[¶ 15.] In this case, the Loan Agreement references the Disbursement Agreement. It expressly provides that the proceeds of the Promissory Note and the Balloon Note “shall be advanced ... in accordance with the Disbursement Agreement. ...” The Disbursement Agreement also references the Loan Agreement and the Balloon Note. The recitals of the Disbursement Agreement state that the parties executed the Disbursement Agreement to provide a mechanism for them to receive payments for their respective membership interests in White Rock Pipeline. The Disbursement Agreement requires that monthly loan payments made pursuant to the terms of the Balloon Note were to be distributed to compensate those who held a membership interest in White Rock Pipeline. Read together, the documents at issue in this case “represent successive steps” taken in order to transfer ownership of White Rock Pipeline to TriState Ethanol. Dakota Gasification Co., 964 F.2d at 734-35. The Disbursement Agreement, Loan Agreement, Promissory Note, and Balloon Note must be construed as a single contract involving the same transaction. After reviewing these documents collectively as a single contract, we believe the parties intended the venue for any suit on the Disbursement Agreement to be the Fourteenth (14th) Judicial District in Rock Island County, Illinois.
[¶ 16.] The dissent notes, “The plain language of the Loan Agreement’s recitals reflects that Tri-State Ethanol, White Rock, and Murphy were the only parties who intended to be bound by the terms of that agreement.” Dissent ¶ 27. But Kramer signed the Loan Agreement in his individual capacity. In doing so, Kramer agreed “to accept the amounts set forth ... [in the Loan Agreement], for [his] interest ] in White Rock.”
[¶ 17.] The recitals of the Disbursement Agreement acknowledge that “the parties are ... some of the signatories to [the] Loan Agreement....” The recitals also note that the “Loan Agreement provides for the repayment of the membership interest in White Rock of the parties herein in the total amount of $301,459.00.... ” The Disbursement Agreement was to serve as no more than a mechanism for the parties “to repay their membership interest in White Rock out of the loan payments to the William F. Murphy Self-Declaration of Trust and Mike D. Murphy required by the Balloon Secured Promissory Note.”
[¶ 18.] Moreover, the Promissory Note states, “The payment of this Note is se *817 cured by a Mortgage, Security Agreements, and Loan Agreement of even date herewith.” (Emphasis added.) The term “Note” is also utilized elsewhere in the document to refer specifically to the Promissory Note. Likewise, the Balloon Note repeatedly uses the term “Note” when describing the rights and obligations of the parties under the Balloon Note. However, the choice of law and venue provisions of both the Promissory Note and the Balloon Note provide:
The undersigned agrees that this Agreement shall be governed by the substantive law of the State of Illinois, without regard to principles of conflicts of laws. The undersigned further agrees that at the sole election of the holder hereof, the jurisdiction and venue for any suit hereon shall be the Fourteenth (14th) Judicial District in Rock Island County, Illinois.
(Emphasis added.)
[¶ 19.] If we view each of the documents at issue in this case as one contract, the use of the term “Agreement” instead of “Note” in the forum-selection clauses of both the Promissory Note and Balloon Note is significant. It indicates that the parties intended the venue for any suit on the collective agreement, including the Disbursement Agreement, to be the Fourteenth (14th) Judicial District in Rock Island County, Illinois.
[¶ 20.] After examining each of documents collectively as one contract, we hold the trial court did not err in finding that the parties intended the venue for any suit on the Disbursement Agreement to be the Fourteenth (14th) Judicial District in Rock Island County, Illinois. The circuit court’s dismissal of this case is affirmed.
[¶ 21.] GILBERTSON, Chief Justice, and MACY, Circuit Court Judge, concur.
[¶ 22.] KONENKAMP and ZINTER, Justices, dissent.
[¶ 23.] MACY, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.

. The Loan Agreement provided that each party had the following financial interest in White Rock:
1) Tri-State: $275,000
2) William Murphy Trust: $78,497
3) Mike D. Murphy: $78,504
4) Walter Woods: $78,616
5) Randy Kramer: $65,842
The two notes were to be paid back to Murphy and the Trust. Tri-State Ethanol was to receive a $275,000 set-off on the $2,100,000 Secured Promissory Note because of the value of its ownership interest in White Rock Pipeline.

. Tri-State Ethanol was not a party to the Disbursement Agreement because it was to receive a set-off on the Promissory Note for its ownership interest in White Rock Pipeline.