ROTH, Circuit Judge,
dissenting:
This case involves a single contract about a hybrid product: the Sunoco Re *269 wards Card, a promotional credit card offered jointly by Sunoco and Citibank.-As a matter of basic contract law, because White’s claims fall squarely within, and arise out of, the broad terms of the integrated contract between White, Sunoco, and Citibank, Sunoco should be able to compel arbitration. Unfortunately, in examining the boundaries of arbitrability, the majority has failed to appreciate precepts of contract law that establish that Sunoco is a party to the single contract at issue here. Accordingly, I respectfully dissent.
I.[1]
As a threshold issue, the promotional materials[2] and the Sunoco Rewards Card Agreement form an integrated contract between White, Citibank and Sunoco.[3] This is clear from the process, outlined in the promotional materials, which,. Sunoco asserts, were prepared jointly by Sunoco and Citibank together.[4] To obtain a Sunoco Rewards Card, a consumer first receives the promotional materials, which advertise the fuel discount and include, selected terms and conditions,, such as procedures for claiming rewards and annual percentage rates for various transactions.[5] The promotional materials explicitly mention that additional terms and conditions will be sent if customers are approved for the card.[6] The promotional pamphlet also includes an application for customers to fill out and return to Citibank. Citibank then processes this application and gathers information about the applicant to verify identity and eligibility for credit. If the application is approved, Citibank sends the applicant a Sunoco Rewards Card, along with the Card Agreement containing additional terms and conditions. Sunoco and Citibank are then responsible for effectuating the discount on Sunoco gasoline purchases, made using the card. Indeed, when White complained to Citibank about discount credits he did not receive for Sunoco gas purchases, White received credit on his Citibank card,[7] as the discount may be received at. the pump or credited to the Citibank billing statement.[8]
Basic contract law dictates that this process cannot create two separate contracts. Promotional materials are generally not considered offers that can be accepted through application, especially when the application is explicitly subject to approval.[9] Here, the promotional materials were *270 clear that mailing in the application would not create a contract, noting that Citibank would have to screen the applicant’s creditworthiness. As such, this process cannot create two separate contracts.
Insofar as the majority holds that there is only one valid contract—the Card Agreement between White and Citibank— with terms independent from those specified in the promotional materials,[10] this analysis is not supported by Florida and South Dakota law. Both Florida and South Dakota law allow multiple documents to constitute a single contract. The Florida Supreme Court has held that “a complete contract may be gathered from letters, writings and telegrams between the parties relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper.”[11] Similarly, the South Dakota Supreme Court has held that “a contract may consist of several writings and all writings must be read together to determine the terms of the agreement.”[12] Notably, the writings need not themselves be contracts.[13]
Florida and South Dakota have each articulated standards for construing multiple documents together as one contract. The Florida Supreme Court will read multiple instruments as one contract where “[t]he instruments in writing which allegedly constitute a valid contract .., specify the terms and conditions definitely and certainly.”[14] The South Dakota Supreme Court has specified that “[a]ll writings that are executed together as part of a single transaction are to be interpreted together”[15] so that “the intent of the parties will be preserved and enforced.”[16] Writings are more likely to be part of a single transaction when one is dependent upon the execution of the other.[17]
Here, the promotional materials and Card Agreement together state the definite terms of the contract and are clearly part of a single transaction; accordingly, both should be considered together as one contract. The documents evince the parties’ intent for the documents to be read together as one contract. First, only when read together do the promotional materials and the Card Agreement state the definite *271 terms of the Sunoco Rewards Card. Without the promotional materials, White would not know what discount he was entitled to through his Sunoco Rewards Card. Without the Card Agreement, White would not know the complete terms and conditions binding the card, including the methods for calculating daily mínimums or procedures for addressing discrepancies on a billing statement.
Second, the fact that the promotional materials and Card Agreement are part of a single transaction is shown through the internal references to, and dependence between, the documents. The promotional materials clearly refer to the Card Agreement in setting out the entire process which would create the Sunoco Rewards Card Contract.[18] While the Card Agreement does not explicitly mention the promotional materials, the Card Agreement is sent in accordance with the process specified in the promotional materials. Moreover, the documents are dependent on one another: without accepting the subsequent Card Agreement, an applicant would not be entitled to the fuel discount discussed in the promotional materials. Without filling out the application in the promotional materials, applicants would not receive the Card Agreement. Under either Florida or South Dakota law, the promotional materials and Card Agreement accordingly must be read together as an integrated contract between White, Sunoco, and Citibank.
II.
Following then from the conclusion that there is but one contract here—the contract between White, Sunoco and Citibank made up of the promotional materials and the Card Agreement—Sunoco, as a party to the contract, is in a position to exercise the provisions of the contract. The plain language of the contract allows Sunoco to compel arbitration of White’s claims.
The majority, however, relies on the clause stating that “[ejither you or we may, without the other’s consent, elect mandatory, binding arbitration[,]”[19]—along with the contract’s definition of “you” as White and “we” as Citibank[20]—to allow only White and Citibank to arbitrate. However, this reading is flawed for two reasons. First, this clause itself is not framed exclusively. Second, the rest of the contract undercuts this interpretation. Following the purportedly limiting clause, the Cardholder Agreement lists as arbitrable any claim which is “[n]ot only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you[.]”[21] The contract further holds that the arbitration clause is explicitly to be interpreted “in the broadest way the law will allow it to be enforced.”[22] Thus, the contract, read as a whole, does not restrict the ability to arbitrate to only White and Citibank.
The majority next holds that Sunoco is not sufficiently “connected with” Citibank to render its claims arbitrable. Based on the examples listed in the clause, the majority opines that sufficient relationships are those “where rights and obligations are intertwined and where liability may be sharedt;]” relative to such relationships, Sunoeo’s “merely ... marketing relationship” with Citibank is insufficient.[23] This is both an overstatement of the necessary relationship and an understatement of the *272 relationship between Sunoco and Citibank. At least some of the examples from the clause, such as an “affiliated company,” do not necessarily share obligations or liability. Moreover, Sunoco and Citibank share more than “a marketing relationship.” In operating the Rewards Card, Sunoco and Citibank’s functions are closely intertwined: Sunoco promulgated some of the terms and conditions that govern the use of the Rewards Card and these rewards are, in some cases, credited directly to the statement balance issued by Citibank. Indeed, the card is called the Sunoco Rewards Card. There is no entity more “connected with” Citibank ■ in this endeavor than Sunoco.
While brief excerpts of the Card Agreement can be narrowly read to support the majority’s interpretation, when read as-a whole the contract clearly evince an intent to allow Sunoco to compel arbitration.,
III.
Finally, even if the plain language of .the contract did not allow Sunoco to compel arbitration, Sunoco may do so if “ ‘traditional principles’ of state law allow a contract to be enforced by or against nonparties to the contract.”[24]1 agree that Florida law would recognize equitable estoppel as a ground for nonsignatories to bind signatories if, in relevant part, “the claim ‘arise[s] out of or relate[s] to’ the agreement containing the arbitration provision.”[25] South Dakota’s standard for equitable estoppel is a little different; while not phrased as equitable estoppel, the South Dakota Supreme Court noted that “cat would be manifestly unfair to allow [plaintiffs] to assert claims arising out of agreements against nonsignatories to those agreements without allowing those [defendants] [also to] invoke the arbitration clause contained in the agreements.”[26] Both standards require that the claim “arise out of’ the underlying agreement.
While the majority holds that White’s claims do not rely on any terms in the Card Agreement, since the underlying contract encompasses both the promotional materials and the Card Agreement, White’s claims clearly do. White’s claims arise out of the terms 'of the fuel, discount, which are outlined in the promotional materials. Since the promotional materials are part of the same contract as the arbitration clause, White’s claims “arise out of’ the underlying agreement, and Sunoco can compel arbitration based on. equitable es-toppel.
ÍV.
At issue is an attempt to bypass, through artful pleading, a valid agreement to arbitrate. Clever framing, however, cannot obfuscate the intent of the parties upon creation of the contract. Given that there is an integrated agreement between White, Sunoco, and Citibank, I would hold that, either under the plain terms of the contract or through equitable estoppel, Su-noco can compel arbitration of the claims brought against it. I respectfully dissent.

. I agree with the majority’s choice of law analysis and will accordingly apply Florida and South Dakota law.

. The majority’s characterization of the promotional materials as parol evidence misses the point. Maj. at 266. The promotional materials are not used to interpret an ambiguous term in an otherwise complete contract; rather, the promotional materials are themselves part of the complete Sunoco Rewards Card contract.

. Whether this is so is a question of law for the courts. Baker v. Wilburn, 456 N.W.2d 304, 306 (S.D. 1990) ("The effects and terms of a contract are questions of law to be resolved by the court.” (citations omitted)).

. Certainly, Sunoco would not have engaged in such a promotion of a Citibank credit card without Citibank’s full knowledge and agreement. .

. JA 44-46, 51-52.'

. JA 44, 52 ("When you become a cardmem-ber, you will receive the full Sunoco Rewards Card Program Terms and Conditions, which may change at any time for any reason upon thirty (30) days prior written notice.”).

. Maj. at 260, fn. 1.

. . JA 44, 52.

. Restatement (Second) of Contracts § 26 (1981) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not *270 intend to conclude a bargain until he has made a further manifestation of assent.”).

. Maj. at 266 ("Sunoco has also conceded that there are no terms to ‘integrate’ with the actual contract at issue: the Card Agreement.”).

. Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498, 502 (1927) (citations omitted).

. Citibank (S.D.), N.A. v. Hauff, 668 N.W.2d 528, 534 (S.D. 2003).

. While most such cases involve multiple contracts, the South Dakota Supreme Court has construed non-contract writings as part of a contract in at least one case. In Citibank (S.D.), N.A. v. Hauff, the South Dakota Supreme Court held that the expiration language on credit cards were part of Citibank’s credit card agreement. 668 N.W.2d at 534. The language on the credit cards was not a separate contract, but merely a writing indicating when the card would expire. However, the court held that "the entire agreement between the parties included the language on the card itself.” Id. The Florida Supreme Court likewise frequently construes letters or telegrams together to constitute a contract. See, e.g., Mehler v. Huston, 57 So.2d 836, 837 (Fla. 1952) (collecting cases).

. Id. at 837.

. Baker, 456 N.W.2d at 306 (citation omitted).

. First Trust & Sav. Bank v. McVeigh, 50 S.D. 604, 211 N.W. 446, 447 (1926).

. Kramer v. William F. Murphy Self-Declaration of Trust, 816 N.W.2d 813, 815 (S.D. 2012).

. JA44, 52.

. JA 91.

. JA 88.

. JA 91.

. JA 91.

. Maj. at 268.

. Griswold v. Coventry First LLC, 762 F.3d 264, 271 (3d Cir. 2014) (internal quotation marks and citation omitted).

. Rolls-Royce PLC v. Royal Caribbean Cruises LTD., 960 So.2d 768, 771 (Fla. Dist. Ct. App. 2007). As the majority notes, there is a second circumstance in which a nonsignatory can compel arbitration: when a signatoiy and nonsignatory engage in concerted misconduct. Op, 263-64. I agree with the majority’s rejection of this ground, however, as it is clear that this exception is not applicable here,

. Rossi, 648 N.W.2d at 815 (alterations in original) (internal quotation marks and citation omitted).